**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
HOLIDAY PARK DRIVE, LLC,

                 *Plaintiff*,

               -against-

NEWIST CORP. *doing business as* Bagel
Toastery and Bagel Toasterie, ERDNIC "EDDIE"
KAYI and HATICE "JAY" ASLANTAS,

                 *Defendants*.
-------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
23-cv-2623 (AMD) (JMW)

**A P P E A R A N C E S :**

Ryan J. Cooper, Esq.
**Cooper, LLC**
1345 Avenue of the Americas
Second Floor
New York, New York 10105
*Attorney for Plaintiff*

*No Appearance by Defendants*

**WICKS,** Magistrate Judge:

      Plaintiff, Holiday Park Drive, LLC, commenced this action against Defendants Newist

Corp. d/b/a BAGEL TOASTERY and BAGEL TOASTERIE ("Newist Corp."), Erdnic "Eddie"

Kayi ("Kayi") and Hatice "Jay" Aslantas ("Aslantas") (collectively "Defendants"), on April 6,

2023, asserting claims for: (i) infringement of a Federally Registered Mark pursuant to 15 U.S.C.

§ 1114 ("Count I"), (ii) Federal Trademark Infringement, Unfair Competition, False Designation

of Origin and Passing Off pursuant to 15 U.S.C. § 1125(a) ("Count II"), (iii) Common Law

Unfair Competition and Trademark Infringement ("Count III"), and (iv) violations of New York

Consumer Protection Act pursuant to N.Y. Gen. Bus. Law § 349 ("Count IV"). (ECF No. 1.)

Before the Court, on referral from Judge Ann M. Donnelly, are Plaintiff's Motions for Default

Judgment: (i) as against the individual defendants, Kayi and Aslantas, dated August 15, 2023 (ECF No. 17), and (ii) as against the corporate defendant, Newist Corp., dated November 9, 2023 (ECF No. 20). (*See* Electronic Orders dated August 17, 2023 and February 14, 2024.)  For the reasons stated herein, the undersigned respectfully recommends (1) granting Plaintiff's Motions for Default Judgment (ECF Nos. 17, 20) as and against all Defendants for Counts I, II and III; (2) denying judgment as to Count IV; and (3) granting a permanent injunction against Defendants.

## BACKGROUND

### I.    Factual Background

The following allegations are drawn from the Complaint. (ECF No. 1.) Plaintiff, a North Carolina limited liability company, owns a trademark for the name and image "FAMOUS TOASTERY" and engages in the business of offering and providing restaurant services as well as operating restaurant locations in connection with Plaintiff's FAMOUS TOASTERY Marks. (*Id.* at ¶ 13.)  Plaintiff registered with the United States Patent and Trademark Office on May 19, 2015, for the name FAMOUS TOASTERY and again on August 30, 2016, for its Design Mark. (*See* ECF No. 1-1, ECF No. 1-2.)   Plaintiff asserts due their continuous advertising, promotion and sale of goods under Plaintiff's FAMOUS TOASTERY Marks, they have acquired significant value in the United States, including New York, and are widely recognized by consumers as having high-quality goods and services. (*Id.* at ¶ 21.)

On September 14, 2021, Plaintiff claims Defendants assumed the business name "Bagel Toasterie" with the New York Secretary of State's Office. (*Id.* at ¶ 24.)  Thereafter, in or around 2021, Plaintiff alleges Defendants opened "Bagel Toastery" in the same location previously occupied by Plaintiff's "FAMOUS TOASTERY" restaurant.  (*Id.* at ¶ 26.)   On December 14, 2021, Plaintiff sent a letter to Defendants Kayi and Aslantas seeking the discontinued use of the name "Bagel Toastery".  (*Id.* at ¶ 27.)   Defendants never responded to that letter.  *Id.*

2

Thereafter, Plaintiff sent a second letter on August 24, 2022, via FedEx, and while FedEx confirmed delivery of the letter, the individual Defendants did not respond again. (*Id.* at ¶ 28.) Plaintiff asserts Defendants knowingly and for profit engaged in the use of the infringing designations "Bagel Toastery" and "Bagel Toasterie" to attract consumers, knowing consumers would likely believe that Defendants' business is sponsored or affiliated with Plaintiff, causing damage to the reputation and goodwill associated with Plaintiff's FAMOUS TOASTERY Marks. (*Id.* at ¶ 32-33.)   Lastly, they claim Defendants' conduct has been willful, deliberate, and in bad faith. (*Id.* at ¶ 72.)

## II.    **Procedural History**

Defendant Aslantas was served on April 18, 2023, at his place of residence through service upon an authorized agent.  (ECF No. 8.)  Defendant Kayi was identified as having accepted service on Aslantas' behalf and is listed as a co-resident of the address. (*Id.*)  Defendant Aslantas failed to answer or otherwise respond to the Complaint, and on May 18, 2023, Plaintiff requested a Certificate of Default against Defendant Aslantas.  (ECF No. 11.)  On May 24, 2023, the Clerk for the Eastern District of New York issued a Certificate of Default against Aslantas. (ECF No. 12.)

Defendant Kayi was served on May 4, 2023, at his place of business, Bagel Toasterie, 2020 Jericho Turnpike, Commack, New York 11725 through service upon an authorized agent. (ECF No. 10.)  Service was accepted by "John Doe" who was deemed to be a female employee/co-worker.  (*Id.*)  Defendant Kayi failed to answer or otherwise respond to the Complaint, and on June 1, 2023, Plaintiff requested a Certificate of Default against Defendant Kayi.  (ECF No. 13.)  On June 14, 2023, the Clerk for the Eastern District of New York issued a Certificate of Default against Kayi.  (ECF No. 14.)

Defendant Newist Corp. was also served on May 4, 2023, at Bagel Toasterie located at 2020 Jericho Turnpike, Commack, New York 11725. (ECF No. 9.) Service was accepted by "John Doe" who was deemed to be a managing agent of defendant. (*Id.*) Defendant Newist Corp. failed to answer or otherwise respond to the Complaint, and on June 1, 2023, Plaintiff requested a Certificate of Default against Newist Corp. (ECF No. 13.) On June 14, 2023, the Clerk for the Eastern District of New York denied the Request for Certificate of Default, as service was not effectuated on the Corporate Defendant since the affidavit of service stated that "John Doe" was served on behalf of Corporate Defendant. (*See* Electronic Order dated June 14, 2023).

On August 2, 2023, Defendant Newist Corp. was served again, this time at One Commerce Plaza, 99 Washington Avenue, Albany, New York 12231 and accepted by Colleen Bonahan. (ECF No. 16.) Defendant Newist Corp. again failed to answer or otherwise respond to the Complaint, and on September 27, 2023, Plaintiff requested a Certificate of Default against Newist Corp. (ECF No. 18.) On October 6, 2023, the Clerk for the Eastern District of New York issued a Certificate of Default against Defendant. (ECF No. 19.)

On July 17, 2023, Plaintiff filed a Motion for Default Judgment against individual Defendants Aslantas and Kayi (ECF No. 15), which the Hon. Ann M. Donnelly referred to the undersigned. (*See* Electronic Order dated July 17, 2023.) The undersigned denied Motion with leave to renew on the grounds that Plaintiff failed to comply with Local Civil Rule 55.2(b) and 55.2(c) and the Servicemembers Civil Relief Act 50 U.S.C. § 3931(b)(1)(A) ("SCRA"). (*See* Electronic Order dated August 8, 2023.) Plaintiff filed a renewed Motion for Default Judgment as against Defendants Aslantas and Kayi on August 15, 2023 (ECF No. 17), and on August 17, 2023, Judge Donnelly referred the motion to the undersigned for a Report and Recommendation.

4

(*See* Electronic Order dated August 17, 2023.)  Plaintiff thereafter filed a separate Motion for

Default Judgment against Defendant Newist Corp. on November 9, 2023 (ECF No. 20), which

was referred to the undersigned by Judge Donnelly on February 14, 2024 for a Report and

Recommendation (collectively, the "Motions"). (*See* Electronic Order dated February 14, 2024.)

Both Motions are addressed herein.

## LEGAL STANDARD

There is a two-step process for the granting of default judgments under Fed. R. Civ. P.

55.  First, the Clerk of the Court enters default when a party fails to plead or otherwise defend

the action.  *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.2.  After the clerk's

certificate of default is issued and posted on the docket, a party may apply for entry of a default

judgment.  Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2(b).  The decision to grant a

motion for default is left to the discretion of the district court. *United States v. Dougherty*, No.

15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and*

*recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016).

A default constitutes an admission of all well-pleaded factual allegations in the

complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L.*

*Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El*

*Norteno Rest. Corp.*, No. 06-cv-1878(RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28,

2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in

the complaint and the allegations as they pertain to liability are deemed true).

However, a plaintiff must still demonstrate that the allegations set forth in the Complaint

state valid claims.  *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir.

2011) (suggesting that "a district court is 'required to determine whether the plaintiff's

allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The Court must therefore ensure: (i) Plaintiff satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; and (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84.

## DISCUSSION

### I.   Procedural Compliance

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1) - (3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application the Clerk's Certificate of Default, a copy of the claim to which no response has been made, a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a default is sought at the last known address of such party with proof of mailing filed with the Court. E.D.N.Y. Local R. 55.2(b)-(c).

Before a default judgment can be entered for the plaintiff, the SCRA additionally commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD)(JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered." *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5465 (ENV) (RER),

2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012). To satisfy this requirement, "[c]ertification . . . of a defendant's military status can be obtained from the Department of Defense's Servicemembers Civil Relief Act website." *ADI Glob. Distribution*, 2023 WL 3355049, at *3.

Initially, this Court denied Plaintiff's motion for default against Defendants Aslantas and Kayi (ECF No. 15) with leave to renew upon properly: (i) submitting the motion in compliance with Local Civil Rule 55.2(b) and 55.2(c), which requires a copy of the claim to which no response has been made, and a copy of the Clerk's certificate of default to be attached to the application for a judgment by default, and for those documents to be served upon Defendants; and (ii) complying with the Servicemembers Civil Relief Act ("SCRA") with respect to the individual defendants, which requires an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit. (*See* Electronic Order dated August 8, 2023.)  The Court, noting that these deficiencies were merely exemplars and not an exhaustive list, further cautioned Plaintiff to review the applicable rules pertaining to filing a motion for default judgment.  (*Id.*)

As previously mentioned, Plaintiff then filed a renewed Motion for Default Judgment against Defendants Aslantas and Kayi (ECF No. 17), which included a proposed judgment (ECF No. 17-4), a memorandum of law (ECF No. 17-5), declarations in support (ECF Nos. 17-6, 17-7)[1], a copy of the Complaint (ECF No.17-3), the Certificate of Default as to both individual Defendants entered by the Court on May 24, 2023 (ECF No. 17-1) and June 14, 2023 (ECF No. 17-2), and the affidavit of service confirming service of the motion for default on August 15, 2023, as to Defendants Aslantas and Kayi via first class mail.  (ECF No. 17-8.)

---

[1] A declaration "in writing, subscribed and certified or declared to be true under penalty of perjury," as offered here, suffices in place of an affidavit. 28 U.S.C. § 1746.

The Declaration of Ryan J. Cooper in Support of Plaintiff's Application for Default Judgment (ECF No. 17-7): (i) stated that as of as of August 11, 2023, a search of the Servicemembers Civil Relief Act Centralized Verification Service ("SCRACVS") confirmed that no one with Defendants Aslantas or Kayi's name, date of birth and social security is in active military service, and (ii) attached a copy of the SCRACVS's response regarding each individual defendant. (*Id*. at ¶ 3-4.) The undersigned finds Plaintiff's attachment of the SCRACVS's response is sufficient to comply with the SCRA, as it shows "the requisite investigation into [the individual defendants'] military service was performed." *Innovative Sports Mgmt., Inc. v. Triangle Eatery & Bar, LLC*, No. 21CV6909 (AMD)(RER), 2022 WL 18151927, at *10 (E.D.N.Y. Dec. 14, 2022), *report and recommendation adopted*, No. 21CV6909(AMD)(RER), 2023 WL 130835 (E.D.N.Y. Jan. 9, 2023); *see also ADI Glob. Distribution*, 2023 WL 3355049, at *3; *Bhagwat v. Queens Carpet Mall, Inc*., No. 14CV5474(ENV)(PK), 2017 WL 9989598, at *1 (E.D.N.Y. Nov. 21, 2017) (noting "[c]ertification, as to the SCRA, of a defendant's military status can be obtained from the Department of Defense's Servicemembers Civil Relief Act website.")

As for Plaintiff's Motion as against Defendant Newist Corp. (ECF No. 20), Plaintiff has properly attached the Certificate of Default entered by the Court on October 6, 2023, a copy of the Complaint (ECF No. 20-2), proposed judgment (ECF No. 20-3), memorandum of law (ECF No. 20-4), declarations in support (ECF No. 20-5, 20-6), and the affidavit of service of the motion for default on November 9, 2023 as to Defendant Newist Corp. via first class mail (ECF No. 20-7) to its Motion. Accordingly, the undersigned finds that both Motions for Default Judgment are procedurally proper and turns to the merits of the Motions.[2]

---

[2] The undersigned notes that SCRA is inapplicable as to the corporate Defendant, Newist Corp. *See Guanglei Jiao v. Shang Shang Qian Inc*., No. 18-CIV-5624 (ARR) (VMS), 2020 WL 6370148, at *9

## II.    **Default Factors**

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). *But see Brown v. Gabbidon*, No. 06-CIV-8148 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("A discussion of prejudice, willfulness and meritorious defenses is required once there is an entry of default or a default judgment and the court considers a request by a defaulting party to vacate that entry pursuant to Rules 55(c) or 60(b).").

Consideration of these three factors counsels toward an entry of default judgment where, as here, Defendants have wholly failed to appear and present any sort of defense, and Plaintiff is left with no further steps to take to secure relief. *See ADI Glob. Distribution*, 2023 WL 3355049, at *4; *see also Flooring Experts*, *Inc.*, 2013 WL 4042357, at *3 (when a defendant is continuously and completely unresponsive the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012); *Northwell*

---

(E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants).

*Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *9 (Mar. 1, 2018) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court"), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted).

### III.   <u>Personal Jurisdiction</u>

When considering a motion for default, a court "may first assure itself that it has personal jurisdiction over the defendant." *Mickalis Pawn Shop, LLC*, 645 F.3d at 133 (citation omitted). Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment." *Foshan Shunde Xinrunlian Textile Co. v. Asia 153 Ltd.*, No. 14-cv-4697 (DLI) (SMG), 2017 WL 696025, at *2 (E.D.N.Y. Jan. 30, 2017), *report and recommendation adopted*, Electronic Order (Mar. 21, 2017).  Here, Defendants have failed to appear in this action such that "a *sua sponte* assessment of personal jurisdiction is appropriate." *Id*. (conducting a *sua sponte* personal jurisdiction analysis on a default motion).

For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service of process effective, and (iii) the exercise of personal jurisdiction must comport with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673. F.3d 50, 60-61 (2d Cir. 2012).

As an initial matter, service was procedurally proper here.  Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years

old and not a party to the case.  *See* Fed. R. Civ. P. 4(c).  Additionally, Rule 4(e) requires that to serve individuals either by: (i) delivering a copy of the summons and of the complaint to the individual personally; (ii) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (iii) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. *See* Fed. R. Civ. P. 4(e).  Defendant Aslantas was served at this home and was received by his co-resident, Defendant Kayi. (ECF No. 8.)

Defendant Kayi was served by delivering a copy of the same to an individual of suitable age and discretion at defendant's actual place of business.  (ECF No. 10); *Velez v. Vassallo*, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002) (quoting N.Y. C.P.L.R. 308(2)) (Fed. R. Civ. P. 4(e)(1) "permit[s] service on individuals, just as service on corporations, to be made pursuant to the law of the state in which the district court is located. Under New York law, personal service may be effected on an individual by 'delivering the summons within the state to a person of suitable age and discretion at the [person's] actual place of business ... and by mailing the summons to the person to be served at his or her last known residence or ... actual place of business.'"). Therefore, service was proper for the individual Defendants.

Alternatively, Rule 4(h) provides that a domestic or foreign corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." *See* Fed. R. Civ. P. 4(h)(1)(B); *Hartford Fire Ins. Co. v. Queens Cnty. Carting, Inc*., No. 20 CV 01844 (NSR), 2022 WL 254367, at *2 (S.D.N.Y. Jan. 27, 2022) (quoting Fed. R. Civ. P. 4(h)(1)(A); (e)(1)) ("Under Rule 4(h)(1)(A), a corporation may be served 'in the manner prescribed by Rule 4(e)(1) for serving an individual,' which includes 'following state law for

11

serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]'").

Under New York law, service on a corporation may be made by "personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee" and "shall be complete when the secretary of state is so served." N.Y. Bus. Corp. Law § 306(b)(1). Here, the Affidavit of Service states that Defendant Newist Corp. was served through the New York Secretary of State by delivering two copies with Business Document Specialist Colleen Banahan. (ECF No. 16.) *See Bergman v. Kids by the Bunch Too, Ltd.*, No. 14-CV-5005 (DRH)(SIL), 2018 WL 1402249, at *4 (E.D.N.Y. Feb. 16, 2018) (holding service was proper where the corporate defendant was served when the Summons and Complaint was delivered to the New York Secretary of State); *Hartford Fire Ins. Co*., No. 20 CV 01844 (NSR), 2022 WL 254367, at *2 (same). Accordingly, service was proper for Newist Corp.

"Personal jurisdiction in a diversity case is determined by the law of the state in which the district court sits." *SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 547 (S.D.N.Y. 2003) (citing *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999)). The same goes for a case arising under federal question jurisdiction unless the applicable federal statute contemplates nationwide service of process, which, as relevant here, the Lanham Act does not. *See Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 358 (E.D.N.Y. 2007) (citing *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir.2004)). Thus, the Court first looks to New York law for the purpose of determining personal jurisdiction over Defendants in New York. Then, the Court evaluates whether the "exercise of jurisdiction under state law satisfies

federal due process requirements of 'fair play and substantial justice.'" *Mortg. Funding Corp. v. Boyer Lake Pointe, LLC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  Under New York law there are two routes for a court to exercise personal jurisdiction.  The Court considers each in turn below.

### A.    General Jurisdiction

The Court considers this issue in light of the Supreme Court's pronouncements in *Daimler* and *Goodyear*, where the Court stated that other than in the "exceptional case," the exercise of general jurisdiction is confined to a corporation's "place of incorporation and principal place of business."  *See Aybar v. Aybar*, 37 N.Y.3d 274, 289, 177 N.E.3d 1257, 1265 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)). Here, Defendant Newist Corp. is a New York Corporation, with its place of business in the state of New York.  (ECF No. 1 at ¶ 3.)  Thus, the Court has general jurisdiction over Defendant Newist Corp. The Court additionally has general jurisdiction over the individual defendants who both reside in New York. (ECF No. 1 at ¶¶ 4-5.) *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile").

### B.    Specific Jurisdiction

Second, pursuant to New York's long-arm statute, CPLR 302(a), a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," as long as the Plaintiff's "cause of action aris[es] from" that "transact[ion]."  CPLR 302(a).  This is known as specific jurisdiction and sometimes referred to as long-arm jurisdiction.  To exercise specific jurisdiction through New York's long-arm statute, "two requirements must be met: (1) The defendant must have transacted business

13

within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith,* 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)).

 "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006).  Courts consider the following factors:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward, Inc.*, 362 F.3d 17 at 22 (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996) (internal citations omitted)).

"Section 302(a) also requires that the claims asserted 'aris[e] from any of the acts' that provide the basis for exercising jurisdiction." *Sea Tow Servs. Int'l, Inc.*, 472 F. Supp. 2d at 360 (E.D.N.Y. 2007) (quoting CPLR 302(a)).   "[A] claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon.'" *Id.* (quoting *Sole Resort*, 450 F.3d at 103).  "A plaintiff must establish the court's jurisdiction with respect to each claim asserted." *Sunward*, 362 F.3d at 24; *see also Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 460 (S.D.N.Y. 2007) (noting that "personal jurisdiction must be determined on a claim-by-claim basis").

As previously stated, Plaintiff claims Defendants assumed the business name "Bagel Toasterie" with the New York Secretary of State's Office.  Additionally, Plaintiff alleges

Defendants opened "Bagel Toastery" in the same location previously occupied by Plaintiff's restaurant in New York. Moreover, individual defendants reside in New York, as Defendant Aslantas was served at his residence in New York and Defendant Kayi accepted that service as his co-resident. Finally, all Defendants operate their business in Commack, New York.

"The exercise of long arm jurisdiction over Defendants by a New York court must also satisfy constitutional due process standards." *Id.* To satisfy the requirements of due process, the defendant's activities in New York must constitute "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum States, thus invoking the benefits and the protection of its laws." *NW Direct Design & Mfg., Inc. v. Glob. Brand Mktg., Inc.,* No. 98-cv-4756 (LAP), 1999 WL 493348, at *3 (S.D.N.Y. July 12, 1999) (quoting *Burger King*, 471 U.S. at 475). This involves a two-fold inquiry: (1) "minimum contacts," and (2) "reasonableness." *Sea Tow Servs. Int'l*, 472 F. Supp. 2d at 360.

*First*, the Court is satisfied that Plaintiff's claims arise out of Defendants' contacts with New York and support specific jurisdiction because this lawsuit stems from those very business transactions. *Second*, the exercise of specific jurisdiction is reasonable. The factors supporting this conclusion include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id*. (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Calif., Solano Cty.*, 480 U.S. 102, 113 (1987)).

Plaintiff, although a North Carolina limited liability company, chose to bring this case in New York, likely because their former business was located in New York. Additionally, the

burden on Defendant, if any, to litigate here does not weigh strongly in its favor because "'the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.'" *Id*. (citation omitted).  Moreover, the individual defendants reside and operate their business in New York.  The Court finds the remaining factors to be neutral, and given Defendant's default, it has not been provided, nor does it find, any reason why exercise of specific jurisdiction would be unreasonable. Accordingly, based upon the foregoing, the undersigned finds that there is a sufficient basis to exercise personal jurisdiction over all Defendants.

IV.    **Liability**

Well-pleaded allegations in a Complaint are presumed true when a defendant fails to present a defense to the court. *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 82 (E.D.N.Y. 2020).   However, "a plaintiff still must demonstrate that the factual allegations set forth in [the] complaint state valid claims to relief." *Id.* (citing *United States v. Meyers*, 236 F. Supp. 3d 702, 708 (E.D.N.Y. 2017)).  Here, the undersigned addresses liability as to both Defendant, Newist Corp. and the individual defendants.

A.    **Liability for Corporate Defendant, Newist Corp.**

1.  **Trademark Infringement and False Designation**

A defaulting defendant is liable for trademark infringement if it is established by Plaintiff that Defendant's "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." *Lighting & Supplies, Inc. v. New Sunshine Energy Sols. Inc.*, No. 20-cv-2790 (FB) (VMS), 2022 WL 771397, at *4 (E.D.N.Y. Feb. 10, 2022), *report and*

*recommendation adopted*, 2022 WL 768302 (E.D.N.Y. Mar. 14, 2022) (quoting 15 U.S.C. §

1114(1)(a).  A Defendant is liable for false designation of origin for "'use[] in commerce any

word, term, name, symbol, or device, or any combination thereof, or any false designation of

origin, false or misleading description of fact, or false or misleading representation of fact, which

. . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association of such person with another person, or as to the origin, sponsorship, or

approval of his or her goods, services, or commercial activities by another person.'" *Lighting &

Supplies*, 2022 WL 771397, at *4 (quoting 15 U.S.C. § 1114(1)(a))).  The Court considers the

trademark and false designation claim together because the claims are "governed by the same

legal standard." *Am. Auto. Ass'n, Inc. v. Limage*, No. 15-cv-7386 (NGG) (MDG), 2016 WL

4508337, at *2 (E.D.N.Y. Aug. 26, 2016).

     To succeed on these claims, "[t]he plaintiff[] must show that they own a valid trademark,

that the defendant used the trademark in commerce, and that their use of that mark is likely to

cause confusion regarding the source of the relevant product or services." *Mitchell Grp. USA

LLC v. Udeh*, No. 14-cv-5745 (DLI) (JO), 2017 WL 9487193, at *3 (E.D.N.Y. Mar. 8,

2017), *report and recommendation adopted*, No. 14-cv-5745 (AMD), 2017 WL 3208532

(E.D.N.Y. July 28, 2017).  "[P]roperly filed registration under 15 U.S.C. § 1065 is deemed

conclusive evidence of the validity of a registered trademark 'relat[ing] to the exclusive right to

use the mark on or in connection with the goods or services specified . . . .'" *Cap. One Fin. Corp.

v. Cap. One Certified Inc.*, No. 18-cv-580 (ARR) (RML), 2019 WL 1299266, at *2 (E.D.N.Y.

Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1299661 (E.D.N.Y. Mar. 21,

2019) (quoting 15 U.S.C. § 1115(b)).

*First*, Plaintiff has a valid trademark by virtue of its registration.  Plaintiff's evidence (*see* ECF No. 1-1) from the U.S. Patent and Trademark Office shows a registered trademark for "FAMOUS TOASTERY" as well as an additional trademark with a design, a slice of bread in between the words "FAMOUS" and "TOASTERY."  *See* ECF No. 1-2. *Second*, Newist Corp. has used the term "TOASTERY" and "TOASTERIE" in their business name, indicating that Defendant attempted to use Plaintiff's trademark for their own business purposes.  "The marks need not be identical, only confusingly similar."  *Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co., Inc.*, 963 F.2d 628, 636 (3d Cir.1992). *Third*, an application of the relevant factors, on balance, shows that Defendant's use of the Mark is likely to cause confusion as to the source of the service.  Courts use the following *Polaroid* factors when determining the likelihood of confusion:

> (1) [the] strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products in the marketplace; (4) the likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its product); (5) evidence of actual confusion; (6) the defendant's bad faith; (7) quality of the defendant's product; and (8) sophistication of the relevant consumer group.

*Lighting & Supplies*, 2022 WL 771397, at *4 (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).  No one factor is outcome determinative, and the factors should be considered under the totality of the circumstances. *Id.* at *4.

*First*, the plaintiff's mark is "presumed to be strong by virtue of being registered."  *See Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 282 (E.D.N.Y. 2009) (citing *Rolex Watch U.S.A., Inc. v. Jones*, 2000 WL 1528263, at *2 (S.D.N.Y. Oct.13, 2000)). Additionally, "[u]nder the Lanham Act, an incontestable registration—defined as a mark that "has been in continuous use for five consecutive years" after the date of registration and is still being "use[d] in commerce"—is conclusive evidence of a plaintiff's exclusive right to use the

specific mark…" *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 441 (S.D.N.Y. 2017) (internal citations omitted.)  Plaintiff has used the trademark "FAMOUS TOASTERY" in the United States since 2015 and has used it thereafter to promote and advertise its restaurant services. (ECF No. 1 at ¶¶14-15.)

*Second*, as to the degree of similarity, Plaintiff's registered Mark is "FAMOUS TOASTERY," and Defendant's registered business name is "BAGEL TOASTERIE".  (*Id.* at ¶ 24.)  While not identical Marks, "[s]imilarity is a holistic consideration that turns on the marks' sight, sound, and overall commercial impression under the totality of the circumstances." *Coty Inc.*, 277 F. Supp. 3d 425 at 446. With respect to sight, the infringement in question, namely the word "toastery" or "toasterie," differs only in the suffix.  The words are differentiated by three letters and are variations of the same word.  *See, e.g. Meridian Transp. Res., LLC v. Magic Carrier Res. LLC*, 518 F. Supp. 2d 1255, 1262 (D. Or. 2007) (finding the words "West" and "Western" similar in sight.) Plaintiff's trademarked design appears as such[3]:



Plaintiff's logo contains the words "FAMOUS" and "TOASTERY" with a slice of bread in the middle. Defendants' business logo appears below[4]:



---

[3] ECF No. 1-1 at 3 (Plaintiff's Registered Trademark Design dated August 30, 2016).

[4] This logo appears at Defendants' business located at 2020 Jericho Turnpike, Commack, New York and corresponding website. *See Bagel Toasterie*, bageltoasterie.com, https://www.bageltoasterie.com/?location=11ec61d3069f7e8cb00cac1f6bbbd01e (last visited February 14, 2024).

Defendants' design contains the words "BAGEL" and "TOASTERIE" with a bagel decal located to the left.  Although not identical, both marks represent similar restaurant logos.  With respect to sound, the undersigned notes there is no there is no difference in sounds between Plaintiff and Defendant's marks.  Both spellings make out the same word, *i.e.* "toastery."

With respect to commercial impression, the meaning behind both parties' marks is also the same as they are both meant to represent the names of the restaurants/eateries the parties own respectively.  Plaintiff correctly asserts that both marks also appear in similar contexts, as both are used to promote, market, offer for sale and/or sell their goods and services on the Internet, including through company websites and social media websites. (ECF No. 17-5 at 15.) Overall, based on the totality of the circumstances, deference is given to Plaintiff as to the second factor that both marks can be deemed strongly similar in nature.  "[S]imilarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features." *Adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1052 (D. Or. 2008) (internal citations omitted).

As to the third and fourth *Polaroid* factors, the parties offer the same service and Defendant continues to operate out of the same location previously owned by Plaintiff.   Both restaurants appear to be breakfast eateries that offer similar food items/menus and gather a similar customer pool.  *See Century 21 Real Est. LLC*, 666 F. Supp. 2d at 282 ("The marketplace factors also favor" Plaintiff: "the parties offer the same basic product (real estate brokerage services) and [Defendant] continues to operate out of the same location it occupied as a Century 21 franchisee.").

As to the fifth factor, while Plaintiff has proffered no evidence of actual confusion between their restaurant and Defendant's restaurant, "it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 875 (2d Cir. 1986) (citation omitted).  Moreover, Plaintiff and Defendant provide the same services under the similar Marks, which "easily supports the inference that consumer confusion will result." *See Lighting & Supplies*, 2022 WL 771397, at *5.

*Sixth*, regarding bad faith, Plaintiff sent Defendants letters on two separate occasions asking them to discontinue use of "BAGEL TOASTERY", to which Defendants never responded. (ECF No. at ¶¶ 27-28.)  As such, Defendant acted in bad faith.  *See Lighting & Supplies*, 2022 WL 771397 at *5 ("Defaulting Defendants demonstrated bad faith by continuing to engage in infringing conduct after receiving a demand to stop engaging in such conduct."); *see also Antetokounmpo v. Costantino*, No. 21-CV-2198 (JMF)(JLC), 2021 WL 5916512 at *6 (S.D.N.Y. Dec. 15, 2021), *report and recommendation adopted sub nom. Antetokounmpo v. Constantino*, No. 21-CV-2198 (JMF), 2022 WL 36232 (S.D.N.Y. Jan. 4, 2022) (finding bad faith where defendant neither complied with cease-and-desist letters nor participated in the lawsuit.)

*Seventh*, Plaintiff states that it is "a well-known and highly regarded provider of restaurant services across the eastern United States."  (ECF No. 1 at ¶ 9.)  Thus, the quality factor also favors Plaintiff because it currently has "no control over the quality of service that Defendant is providing under the guise of its brand."  *See Lighting & Supplies*, 2022 WL 771397. at *6.  And, finally, given the similar nature of the Mark used by Defendants, and that Defendants operate their business out of the same location that Plaintiff previously owned, there is no reason to believe that the average consumer would not think that they were conducting

business with Plaintiff. (ECF No. 15-9 at 10.)   Moreover, "[t]he eighth Polaroid factor, 'sophistication of the buyers,' has been called 'analogous' to the proximity factor." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996).

On balance, the *Polaroid* factors favor a finding of liability for Federal Trademark Infringement under 15 U.S.C. § 1114 *et. seq*. and False Designation of Origin under 15 U.S.C. § 1125(a) against Defendant.  *See Lighting & Supplies*, 2022 WL 771397, at *5.  Accordingly, the undersigned respectfully recommends that the Court grant Plaintiff's Motion for Default Judgment as to liability against Defendant Newist Corp. on Counts I and II.

### 2. Common Law Unfair Competition and Trademark Infringement

Count III describes liability pertaining to Defendants' trademark infringement and unfair competition under common law. Under New York law, "[t]he standards for unfair competition claims under federal and New York law are the same as those governing trademark infringement claims under the Lanham Act, except the common law [unfair competition claim] requires a showing of bad faith or intent." *Turn On Prods., Inc. v. Almost Famous Apparel, LLC*, No. 18-CV-00625(ILG)(RER), 2019 WL 2436297 at *3 (E.D.N.Y. Apr. 12, 2019) (internal citations omitted).

Plaintiff asserts Defendant's conduct constitutes willful and deliberate use of the infringing "Bagel Toastery" and "Bagel Toasterie" designations and is likely to cause, and already has caused, confusion, mistake and deception as to the origin, sponsorship, or approval from Plaintiff.  (ECF No. 1 at ¶ 64.)  Further, Defendants were put on notice as to Plaintiff's Marks, and of the damage engendered by Defendants' use of the highly similar, infringing "Bagel Toastery" and "Bagel Toasterie" designations, and yet failed to withdraw use of their Mark.  (*Id.* at ¶ 65.)  Therefore, since Plaintiff has established Defaulting Defendant's liability

for federal trademark infringement, as well as their bad faith and deceptive conduct, liability has also been established under New York's common law.  Accordingly, the undersigned respectfully recommends that the Court grant Plaintiff's Motion for Default Judgment as to liability against Defendant Newist Corp. for Count III.

### 3. N.Y. Gen. Bus. Law § 349

Plaintiff additionally asserts that Defendants violated N.Y. Gen. Bus. Law § 349 ("GBL § 349") by willfully and deliberately misrepresenting to the public that their business is approved or endorsed by, or otherwise is affiliated with, Plaintiff, when in fact it is not.  GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a).  However, "the majority view in this Circuit is "that trademark or trade dress infringement claims are not cognizable under [§349] unless there is a specific and substantial injury to the public interest *over and above ordinary trademark infringement* or dilution." *Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, No. 07 CIV.6959 (DAB), 2009 WL 4857605 at *8 (S.D.N.Y. Dec. 14, 2009) (quoting *Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.,* 198 F. Supp. 2d 474, 486–87 (S.D.N.Y. 2002)).

The Complaint does not contain allegations of a specific and substantial injury to the public interest, nor did Plaintiff adequately address it in its Motions for Default Judgment.  *See Gross v. Bare Escentuals Beauty, Inc.*, 632 F. Supp. 2d 293, 299 (S.D.N.Y. 2008) ("Consumer confusion as to the source of the product does not create a cause of action under this statute. Danger to the public safety and health does.")  Defendant's conduct is "insubstantial" and does not fall within the conduct that GBL § 349 was meant to protect against.  *Id.*  Therefore, plaintiff fails to bring a sufficient claim under GBL § 349. Accordingly, the undersigned respectfully

recommends this Court grant Plaintiff's Motion for Default Judgment as against Defendant Newist Corp. as to Counts I, II and III, but deny the Motion as to Count IV.

### B.    Liability Against Individual Defendants Aslantas and Kayi

"Individual defendants may be held personally, contributorily, or vicariously liable for trademark infringement." *Abbott Lab'ys v. Adelphia Supply USA*, No. 15CV5826CBALB, 2019 WL 5696148, at *16 (E.D.N.Y. Sept. 30, 2019). However, in order for an individual defendant to be held liable, there must be a finding of "direct or primary infringement" on behalf of the corporate defendant. *See id.* (citing *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998)). As previously discussed, the undersigned finds Newist Corp. liable for its infringing use of Plaintiff's mark. *See supra*, Section IV.A.

It is well established in the Second Circuit that, under the Lanham Act, a corporate officer may be held *personally* liable for trademark infringement and unfair competition if the officer is a "moving, active, conscious force behind the defendant corporation's infringement" – that is, the officer was either: (i) "the sole shareholder and employee, and therefore must have approved of the infringing act," or (ii) a "direct participant in the infringing activity." *Abbott Lab'ys*, 2019 WL 5696148, at *16 (internal citations omitted) (collecting cases); *see also Victorinox AG v. B&F Sys., Inc.,* 709 F. App'x 44 (2d Cir. 2017), *as amended* (Oct. 4, 2017); *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014) (holing that in determining personal liability, it is immaterial whether an officer knows that his acts will result in infringement). "Contributory liability is established if the defendant intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Abbott Lab'ys*, 2019 WL 5696148, at *16 (internal citations omitted). Finally, vicarious liability is established if "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in

transactions with third parties or exercise joint ownership or control over the infringing product." *Id.* (internal citations omitted).

Here, Defendants Aslantas and Kayi are co-owners of Bagel Toasterie. (ECF No. 17-3 at ¶¶ 4-5); *see Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 247 (S.D.N.Y. 2010) (holding "joint ownership" can establish vicarious liability). Plaintiff alleges that both individuals knew they were using the infringing "Bagel Toastery" to design and advertise their own business. (ECF No. 17-5 at 9.)  *See e.g. Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (finding liability against individual defendant for advertising and promoting counterfeit products using plaintiff's trademark). Further, Plaintiff asserts they sent two separate letters to the individual defendants regarding the infringing Mark, and neither respond to either letter. *See* ECF No. 17-5 at 9-10; *Abbott Lab'ys*, No. 15CV5826CBALB, 2019 WL 5696148, at \*17 (holding co-founder, president, and owner of the corporate defendant personally and vicariously liable for infringement where "emails and documents plainly show[ed] that he directed, authorized, and supervised the purchase of" and was otherwise contacted regarding the infringing product.")

Therefore, because Defendants Aslantas and Kayi are co-owners of Bagel Toasterie, and because the undersigned finds they were both  "moving, active, conscious force[s] behind [Newsit Corp.'s] infringement[,]" the undersigned recommends this Court hold them both personally vicariously liable for trademark infringement. *Abbott Lab'ys*, No. 15CV5826CBALB, 2019 WL 5696148, at \*17.

## V.    **Injunctive Relief**

In its Motions, Plaintiff seeks an order permanently enjoining Defendants from continued use of the confusingly similar term "Toasterie," as it is "confusing to Plaintiff's branding and will dilute the goodwill associated with Plaintiff."  (ECF No. 17-5 at 23.)  "A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." *CommScope, Inc. of N. Carolina v. Commscope (U.S.A.) Int'l Grp. Co.*, 809 F. Supp. 2d 33, 41 (N.D.N.Y. 2011) (quoting *Pitbull Prods., Inc. v. Univ. Netmedia, Inc.*, No. 07-cv-1784, 2007 WL 3287368, at *5 (S.D.N.Y. Nov. 7, 2007)).

Here, the first prong is met because "the Lanham Act vests the court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant . . . ." *See Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 159 (E.D.N.Y. 2010) (quoting 15 U.S.C. § 1116); *see also Century 21 Real Est. LLC*, 666 F. Supp. 2d at 295 ("'[A]ccording to the principles of equity and upon such terms as the court may deem reasonable to prevent the violation of . . . [the Act.]'" (quoting 15 U.S.C. § 1116)).

As to the second prong, "[a]n injunction is warranted where a party has succeeded on the merits, there is an absence of an adequate remedy at law, and an injunction is necessary to prevent irreparable harm." *Id.* (citing *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir. 2006)).  There is actual success on the merits for Plaintiff's claims.  *See Rolls-Royce PLC*, 688 F. Supp. 2d 150, 159 (E.D.N.Y. 2010) ("Actual success on the merits is shown by virtue of the defendant's default.").  Irreparable harm is established in trademark cases where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply

confused, as to the source of the goods or services in question. *Century 21 Real Est. LLC*, 666 F. Supp. 2d at 295 (quoting *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir.1987)).

Here, Plaintiff seeks to "permanently enjoin Defendants from infringing Plaintiff's "FAMOUS TOASTERY" Marks in the United States and in the State of New York." (DE 17-5 at 21; DE 20-4 at 21.) Irreparable injury is likely because Defendants continue to use and infringe Plaintiff's Mark and their use will likely mislead customers as to the source of the services. *See Century 21 Real Est. LLC*, 666 F. Supp. 2d at 295 ("The record establishes that, absent an injunction, the defendants will continue to infringe the Century 21 Marks, and that such use is likely to mislead consumers as to the source of [defendant's] real estate brokerage services."); *see also Sunward Elecs.*, 362 F.3d at 25 (finding where "unlawful use and consumer confusion have been demonstrated, a finding of irreparable harm is automatic.")

Finally, "in cases where confusion about the origin of goods or services leads to damage to reputation or loss of a potential relationship with a client that 'would produce an indeterminate amount of business in years to come[,] monetary damages are difficult to establish and are unlikely to present an adequate remedy at law." *Century 21 Real Est. LLC*, 666 F. Supp. 2d at 296 (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir.2004)). This is such a case. Here, the continued use of Plaintiff's Mark may negatively affect Plaintiff's brand and its reputation in ways that are impossible to quantify in terms of monetary compensation. *See id.* (finding that allowing defendants to "continue to use" of the marks "may adversely affect" the former licensor's "reputation and business in ways that may be difficult to quantify and that will not lend themselves easily to monetary compensation.") And the monetary damages the Court recommends, as discussed *infra*, are insufficient alone to prevent irreparable harm absent an injunction. *See Est. of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186,

196 (E.D.N.Y. 2011) (finding an award of monetary damages by itself would not fully compensate plaintiff because without an injunction the defendant's continued use of plaintiff's mark may adversely affect "Plaintiff's business dealings and future negotiations in ways that may be difficult to quantify.")

Courts also consider the balance of hardships between the parties to see if a remedy in equity is warranted, and that the public interest "would not be disserved by a permanent injunction." *See Est. of Ellington*, 812 F. Supp. 2d at 196. Here, if Defendants continue to use the Marks it will cause damage and immediate irreparable harm to Plaintiff, Plaintiff's FAMOUS TOASTERY Mark and Plaintiff's TOASTERY Mark, as well as to Plaintiff's valuable reputation and goodwill with the consuming public. (ECF No. 17-5 at 23; ECF No. 20-4 at 23; ECF No. 17-6 at ¶ 16.) Additionally, Defendant would still be able to continue offering its restaurant if enjoyed but just would not be able to use Plaintiff's Marks. *See Est. of Ellington*, 812 F. Supp. 2d at 196-97. And the public interest would benefit from being protected from Defendant's continued deception. *Id.* Accordingly, the undersigned respectfully recommends that a permanent injunction as requested by Plaintiff with respect to its Marks is appropriate, and thus, default judgment for injunctive relief be entered.

## VII.   Damages and Attorney Fees

Once liability for default is established, the next inquiry is damages. *See Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012) (While "the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded.") A party's default constitutes a concession of all well pleaded allegations, however, such default "is not considered

an admission of damages." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 271 (E.D.N.Y. 2019) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)). Notably, Plaintiff does not seek monetary damages on either Motion, but rather seeks only attorney's fees and costs as a monetary judgment. (ECF Nos. 17-5, 20-3.)

Under the Lanham Act, the Supreme Court has held that only an "exceptional" case may be awarded attorney's fees. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "Exceptional" is defined as:

> one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Id.* at 544.

District courts have broad discretion to engage in a "case-by-case exercise" and consider the totality of the circumstances." *Id.* "Although the Second Circuit has not specifically addressed whether a default is considered 'unreasonable' conduct under *Octane Fitness*, the Court shares the view of other courts in this district that a [d]efendant's default — standing alone — is not 'exceptional.'" *Antetokounmpo v. Costantino*, No. 21 Civ. 2198 (JMF) (JLC), 2021 WL 5916512, at *7 (S.D.N.Y. Dec. 15, 2021) (collecting cases) (internal quotation marks omitted), *R&R adopted*, 2022 WL 36232 (S.D.N.Y. Jan. 4, 2022).

The instant Motions failed to provide any documentation, records or support regarding Plaintiff's entitlement to attorneys' fees and costs, or as to what the amounts should be. Regardless of "the absence of opposition" due to the default of defendant, "the court cannot

simply accept a statement of the plaintiff concerning the amount of damages, but rather must be provided with evidentiary proof that establishes the amount of damages." *Century 21 Real Est. LLC v. Team Mates Realty Corp.*, No. 07-cv-4134 (NG) (VVP), 2009 WL 910655, at *5 (E.D.N.Y. Feb. 18, 2009), *report and recommendation adopted*, 2009 WL 890561 (E.D.N.Y. Mar. 31, 2009).  Therefore, the undersigned concludes that an award of attorneys' fees is inappropriate here given the paucity of support. *See Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983) (holding the party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and necessity of hours spent and rates charged); *Labarbera v. ASTC Labs., Inc*., 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010) (An application for attorney's fees must be supported "by accurate, detailed, and contemporaneous time records."); *see also Gesualdi v. Gen. Concrete*, Inc., No. 11 CV 1866, 2013 WL 1192967, at *9 (E.D.N.Y. Feb. 1, 2013) (internal citations omitted) ("The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances."); *Cap. One Fin. Corp. v. Cap. One Certified Inc.,* No. 18CV580ARRRML, 2019 WL 1299266, at *8 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, No. 18CV580ARRRML, 2019 WL 1299661 (E.D.N.Y. Mar. 21, 2019) (same).

In light of the foregoing, it is respectfully recommended that Plaintiff's application for attorneys fees be denied, without prejudice and with leave to renew articulating how this is an "exceptional" case, and with supporting documentation as to entitlement or amount of fees.

## **CONCLUSION**

For the foregoing reasons, the undersigned finds Defendants intentionally and willfully infringed upon the Plaintiff's proprietary trademarks in violation of the Lanham Act. Accordingly, the undersigned respectfully recommends that the Plaintiff's Motions for Default Judgment and

for a permanent injunction (ECF Nos. 17, 20) be **GRANTED** *in part* as to Counts I, II and III, and

**DENIED** *in part* as to Count V, consistent with this Report and Recommendation, and that this

Court enter an Order providing:

> (1) Pursuant to 15 U.S.C. §1116, Defendants, their agents, employees and any person acting in concert with either of them are permanently enjoined from using Plaintiff's proprietary trademarks, including Plaintiff's FAMOUS TOASTERY Mark, Plaintiff's TOASTERY Mark, or any confusingly similar derivation or imitation thereof in any manner whatsoever; and

> (2) Pursuant to 15 U.S.C. § 1118, Defendants shall: (i) immediately and permanently cease from doing business as "Bagel Toastery" and/or "Bagel Toasterie" ("Defendants' Infringing Designations") or any derivation thereof; (ii) immediately and permanently cease all use of Defendants' Infringing Designations online, including on any website or social media channel; and (iii) deliver to, or submit evidence satisfactory to Plaintiff of the destruction of all other labels, signs, prints, packages, wrappers, receptacles, advertising materials, promotional materials and marketing materials in Defendants' possession, custody or control bearing the words and/or symbols that comprise trademark or trade names of Plaintiff, or any reproduction, counterfeit, copy, or colorable imitation thereof, and any means of making the same.

## <u>OBJECTIONS</u>

A copy of this Report and Recommendation is being electronically served on counsel.

Counsel for Plaintiff is directed to serve copies of this Report and Recommendation on or before

February 19, 2024, and file proof of service of same on ECF. Any written objections to this

Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days

of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a),

72(b). Any requests for an extension of time for filing objections must be directed to the district

judge assigned to this action prior to the expiration of the fourteen (14) day period for filing

objections. Failure to file objections within fourteen (14) days will preclude further review of

this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v.*

*Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive

right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object

timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:      Central Islip, New York
             February 15, 2024

                              RESPECTFULLY RECOMMENDED,

                        /S/ *James M. Wicks*
                           JAMES M. WICKS
                   United States Magistrate Judge