UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOLIDAY PARK DRIVE, LLC, <br><br> *Plaintiff*, <br><br> -against- <br><br> NEWIST CORP. *doing business as* Bagel Toastery and Bagel Toasterie, ERDNIC "EDDIE" KAYI, and HATICE "JAY" ASLANTAS, <br><br> *Defendants*. | Docket No. 23-cv-2623 (AMD) (JMW) |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO HOLD DEFENDANTS IN CONTEMPT FOR VIOLATING THE PERMANENT INJUNCTION**

SANTOMASSIMO DAVIS LLP
1 Gatehall Drive, Suite 100
Parsippany, NJ 07054
(201) 712-1616
*Attorneys for Plaintiff*
*Holiday Park Drive*

Anthony J. Davis, Esq., Of Counsel
Paul Salvatoriello, Esq., On the Brief

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY .................................. 1

LEGAL ARGUMENT ................................................................................................ 5

    DEFENDANTS SHOULD BE HELD IN CONTEMPT FOR VIOLATING
    THE PERMANENT INJUNCTION ENTERED BY THE COURT ON
    APRIL 22, 2024 ................................................................................................... 5

    A.    The Court Has the Authority to Issue Sanctions for Contempt
           Based on Defendants' Violations of the Order .......................................... 5

    B.    Sanctions Are Appropriate and Defendants Should Be Required
           to Compensate Plaintiff for Violations of the Permanent Injunction ....... 7

CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
87 F. Supp. 2d 281 (S.D.N.Y. 2000) ............................................................................... 9

*CBS Broadcasting Inc. v. FilmOn.com, Inc.*,
814 F.3d 91 (2d Cir. 2016) ............................................................................................. 8

*City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n,*
170 F.3d 279 (2d Cir.1999) ............................................................................................ 6

*EEOC v. Local 580*,
925 F.2d 588 (2d Cir. 1991) ........................................................................................... 6

*Ex parte Robinson*,
86 U.S. (19 Wall.) 505 (1874) ....................................................................................... 6

*In re Chief Executive Officers Clubs, Inc.*,
359 B.R. 527 (S.D.N.Y. 2007) ....................................................................................... 9

*In re Cueto*,
443 F. Supp. 857 (S.D.N.Y. 1978) ................................................................................. 8

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994) ....................................................................................................... 6

*Levin v. Tiber Holding Corp.*,
277 F.3d 243 (2d Cir. 2002) ........................................................................................... 7

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,*
885 F.2d 1 (2d Cir.1989) ........................................................................................... 7, 8

*Matter of Dickinson*,
763 F.2d 84 (2d Cir. 1985) ............................................................................................. 8

*Monsanto Co. v. Haskel Trading, Inc.*,
13 F.Supp.2d 349 (E.D.N.Y. 1998) ............................................................................... 6

*New York State Nat'l Org. for Women v. Terry*,
94 F. Supp. 2d 465 (S.D.N.Y. 2000) ............................................................................. 8

*Perfect Fit Indus. v. Acme Quilting Co.,*
673 F.2d 53 (2d Cir.1982) .............................................................................................. 8

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) .................................................................................................................. 6

*Shillitani v. United States*,
384 U.S. 364 (1966) .................................................................................................................. 5

*Spallone v. United States*,
493 U.S. 265 (1990) .................................................................................................................. 5

*Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126 (2d Cir.1979) .................................. 7

## PRELIMINARY STATEMENT

In this case, Defendants have openly infringed, and profited from, Plaintiff's trademark. Yet, Defendants have failed to respond to any request, pleading, or Court Order in this case. Specifically, there is clear and convincing evidence that Defendants have refused to abide by this Court's Permanent Injunction Order, which *requires* Defendants to cease their infringing conduct of running a restaurant under the names "Bagel Toastery" and "Bagel Toasterie."

Accordingly, it is necessary and appropriate to hold Defendants in contempt and to order sanctions against Defendants that are reasonably designed to bring about their compliance. Plaintiff, therefore, asks this Court to find Defendants in contempt and order sanctions that include (i) coercive fines -- $1,000.00 for every day Defendants fail to comply with the PI Order; (ii) compensatory fines – in the amount equal to any and all profits that Defendants earn from the sale of food products under the name "Bagel Toastery" or "Bagel Toasterie" since the service of the PI and (iii) attorneys' fees and costs borne by Plaintiff in enforcing the PI Order.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Holiday Park Drive, LLC ("Plaintiff") owns a trademark for the name and image "FAMOUS TOASTERY" and engages in the business of offering and providing restaurant services as well as operating restaurant locations in connection with Plaintiff's FAMOUS TOASTERY Marks. (ECF No. 1 at ¶ 13.) Plaintiff registered with the United States Patent and Trademark Office on May 19, 2015, for the name FAMOUS TOASTERY and again on August 30, 2016, for its related Design Mark. (See ECF No. 1-1, ECF No. 1-2.)  Due to its continuous use, advertising, promotion, and sale of goods under its FAMOUS TOASTERY Marks, Plaintiff has acquired significant value in the United States, including New York, and is widely recognized by consumers as having high-quality goods and services. (*Id*. at ¶ 21.)

On September 14, 2021, Plaintiff learned that Defendants assumed the business name "Bagel Toasterie" with the New York Secretary of State's Office. (*Id*. at ¶ 24.) Thereafter, in or around 2021, Defendants opened "Bagel Toastery" in the same location previously occupied by Plaintiff's "FAMOUS TOASTERY" restaurant in Commack, New York. (*Id*. at ¶ 26.)

On December 14, 2021, Plaintiff sent a letter to Defendants Kayi and Aslantas seeking the discontinued use of the name "Bagel Toastery." (*Id*. at ¶ 27.) Defendants ignored that letter. *Id*. Plaintiff then sent a second letter on August 24, 2022, via FedEx. FedEx confirmed that the second letter was delivered, yet the individual Defendants ignored the second letter. (*Id*. at ¶ 28.) Thus, while ignoring Plaintiff's request for Defendants to stop using the name "Bagel Toastery," Defendants knowingly and for profit continued to engage in the use of the infringing designations "Bagel Toastery" and "Bagel Toasterie" to attract consumers, knowing consumers would likely believe that Defendants' business is sponsored or affiliated with Plaintiff, causing damage to the reputation and goodwill associated with Plaintiff's FAMOUS TOASTERY Marks. (*Id*. at ¶ 32-33.) Defendants' conduct has been willful, deliberate, and in bad faith.

Accordingly, on April 18, 2023, Plaintiff served a Complaint on Defendant Aslantas at his place of residence through service upon an authorized agent. (ECF No. 8.) Defendant Kayi was identified as having accepted service on Aslantas' behalf and is listed as a co-resident of the address. (*Id*.) Defendant Aslantas failed to answer or otherwise respond to the Complaint, and on May 18, 2023, Plaintiff requested a Certificate of Default against Defendant Aslantas. (ECF No. 11.) On May 24, 2023, the Clerk for the Eastern District of New York issued a Certificate of Default against Aslantas. (ECF No. 12.)

On May 4, 2023, Defendant Kayi was served at his place of business, Bagel Toasterie, 2020 Jericho Turnpike, Commack, New York 11725 through service upon an authorized agent.

(ECF No. 10.) Service was accepted by "John Doe" who was deemed to be a female employee/co-worker. (*Id*.) Defendant Kayi failed to answer or otherwise respond to the Complaint, and on June 1, 2023, Plaintiff requested a Certificate of Default against Defendant Kayi. (ECF No. 13.) On June 14, 2023, the Clerk for the Eastern District of New York issued a Certificate of Default against Kayi. (ECF No. 14.)

On August 2, 2023, Defendant Newist Corp. was served with the Complaint at One Commerce Plaza, 99 Washington Avenue, Albany, New York 12231 and was accepted by Colleen Bonahan. (ECF No. 16.) Defendant Newist Corp. failed to answer or otherwise respond to the Complaint, and on September 27, 2023, Plaintiff requested a Certificate of Default against Newist Corp. (ECF No. 18.) On October 6, 2023, the Clerk for the Eastern District of New York issued a Certificate of Default against Defendant. (ECF No. 19.)

On August 15, 2023 and November 9, 2023, Plaintiff filed Motions for Default Judgment against individual Defendants Aslantas and Kayi, and Defendant Newist Corp. (ECF Nos. 17 and 20). The Honorable Ann M. Donnelly, U.S.D.J., referred the Motions to Magistrate Judge James Wicks for a Report and Recommendation. (*See* Electronic Orders dated August 17, 2023, and February 14, 2024).

On February 15, 2024, Magistrate Judge Wicks filed a lengthy, thoughtful, and detailed Report and Recommendation in which the Magistrate Judge found that the Defendants intentionally and willfully infringed upon Plaintiff's proprietary trademarks in violation of the Lanham Act. The Magistrate Judge recommended that Plaintiff's Motions for Default Judgment and for a permanent injunction be granted on Plaintiff's claims of trademark infringement under 15 U.S.C. § 1114 (Count I of Plaintiff's Complaint); False Designation of Origin under 15 U.S.C.

§ 1125(a) (Count II); and common law unfair competition and trademark infringement (Count III). (ECF No. 21).

District Court Judge Ann M. Donnelly adopted Magistrate Judge Wicks' Report and Recommendation, and on April 22, 2024, the Court (i) granted Plaintiff's Motions for Default Judgment entering a "Final judgment as to liability" against all Defendants on Counts I-III of Plaintiff's Complaint; (ii) found that Plaintiff "has suffered damages, including loss of goodwill and damage to its reputation as a result of Defendants' conduct;" and (iii) ordered a permanent injunction against Defendants. Specifically, the permanent injunction required, in relevant part, as follows:

- Defendants . . . [are] preliminarily and permanently enjoined and restrained from using on or in connection with the importation, sale, offering for sale, distribution, exhibition, display, or advertising of its goods or services under the infringing "Bagel Toastery" and "Bagel Toasterie" designations, or any other trademark or designation in combination with other words or symbols, or any other marks or symbols that are confusingly or deceptively similar to, or colorably imitative of Plaintiff's FAMOUS TOASTERY Marks;

- As soon as possible, and no later than 21 days after this Injunction Order is entered by the Court and served on Defendants, Defendants . . . will destroy and/or change all literature, signage, labels, prints, packages, wrappers, containers, advertising materials, Internet content, stationary, software, and any other items in their possession or control that contain the infringing "Bagel Toastery" or "Bagel Toasterie" designations or any term confusingly similar to FAMOUS TOASTERY or TOASTERY, either standing alone or in combination with other words or symbols;

- As soon as possible, and no later than 21 days after this Injunction Order is entered by the Court and served on Defendants, Defendants will cancel or amend any business name, trade name, assumed name, or corporate registration or application that contains Plaintiff's FAMOUS TOASTERY Marks, or any other confusingly similar name, logo, or mark, including but not limited to, registrations for "Bagel Toasterie;"

- Within 30 days after this Injunction Order is entered by the Court and served on Defendants, Defendants are required to file with this Court and serve on Holiday Park Drive a report, in writing and under oath, setting forth in detail

the manner and form in which Defendants have complied with the Injunction Order.

(ECF No. 25).

In short, Defendants were ordered to stop using the infringing "Bagel Toastery" and "Bagel Toasterie" designations; destroy all items that contained the infringing designations within 21 days of the Permanent Injunction Order ("PI Order"), change their business name within 21 days of the PI; and file a sworn report with the Court explaining how they have complied with the PI within 30 days of the PI. *Id.* Defendants were served with the PI Order on or around April 24, 2024. (*See* Declaration of Paul Salvatoriello, Esq., dated August 19, 2024 ("Decl.") at Exhibits A, B, and C).

It is now long past the 21-day and 30-day deadlines, and Defendants have completely failed to comply with any part of the PI Order. Photos of the restaurant and screen shots of "Bagel Toasterie's" website taken within the last few weeks show that Defendants are continuing their open and notorious infringement of Plaintiff's trademarks. (*See* Decl. at Exhibits D and E).

Given that the Court also ordered in its PI Order that "[a]ny violation of this Injunction Order may be punishable as a ***contempt of Court***, in addition to any and all other remedies available at law or in equity," (ECF No. 25) (emphasis added), this motion follows.

## **LEGAL ARGUMENT**

**DEFENDANTS SHOULD BE HELD IN CONTEMPT FOR VIOLATING THE PERMANENT INJUNCTION ENTERED BY THE COURT ON APRIL 22, 2024.**

A. **The Court Has the Authority to Issue Sanctions for Contempt Based on Defendants' Violations of the Order**

Courts have inherent power to enforce compliance with their lawful orders through civil contempt. *Spallone v. United States*, 493 U.S. 265 (1990); *Shillitani v. United States*, 384 U.S.

364, 369 (1966).  As the Supreme Court stated in *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1874), "the power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts and, consequently, to the due administration of justice."

Courts have embraced the inherent contempt authority as a power "necessary to the exercise of all others." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) ("Courts independently must be vested with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and to preserve themselves and their officers from the approach and insults of pollution."); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (stating that contempt powers are "the most prominent" of court's inherent powers "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court").

"A party may be held in contempt only if it is proven by 'clear and convincing' evidence that the party violated a 'clear and unambiguous' order of the court." *City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n,* 170 F.3d 279, 282 (2d Cir.1999) (citation omitted).  The court may impose civil contempt only where (1) the underlying order is clear and unambiguous, (2) proof of non-compliance is clear and convincing, and (3) the contemnor has not been reasonably diligent and energetic in attempting to accomplish what was ordered.  *EEOC v. Local 580*, 925 F.2d 588, 594 (2d Cir. 1991).

In this regard, the "clear and convincing" prong requires that "[t]he clarity of the order must be such that it enables the enjoined party to ascertain from the four corners of the order precisely what acts are forbidden." *Monsanto Co. v. Haskel Trading, Inc.*, 13 F.Supp.2d 349, 363 (E.D.N.Y. 1998) (internal citation and quotation marks omitted).  In addition, in the civil contempt

context, "the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal citation and quotation marks omitted).

Contempt is clearly warranted in this case as all three criteria have been met by clear and convincing evidence. First, there can be no dispute that the PI Order exists and is valid. Second, Defendants are well aware of its existence as they were properly served with the PI Order. (*See* Decl. at Exhibits A, B, and C). Third, Defendants have not only failed to be "reasonably diligent" in following the PI Order, they have failed to follow any part of the PI Order. The evidence in the record proves that they (i) did not cease using the infringing trademarks of "Bagel Toastery" or "Bagel Toasterie;" (ii) failed to destroy all items that contained the infringing designations within 21 days of the PI Order; (iii) failed to change their business name within 21 days of the PI; and (iv) failed to file a sworn report with the Court explaining how they have complied with the PI within 30 days of the PI.

In short, it appears that Defendants believe that if they just continue to ignore this action and the Court's PI Order, then the Order will somehow go away. That is unjust, unfair, and plain wrong. Plaintiff submits that the Court, in order to "preserve order in judicial proceedings and enforce the court's judgments," should punish Defendants for their contumacious conduct.

B. **Sanctions Are Appropriate and Defendants Should Be Required to Compensate Plaintiff for Violations of the Permanent Injunction**

The imposition of civil contempt sanctions may serve dual purposes: (i) to secure future compliance with court orders and (ii) to compensate the party that has been wronged. *See Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1, 5 (2d Cir. 1989); *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir. 1979). Such sanctions may not be imposed as a purely punitive measure. *Manhattan Indus.,* 885 F.2d at 5.

To the extent that a contempt sanction is coercive, the court has "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus. v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir. 1982). A court should consider several factors in calculating a sanction, including "the character and magnitude of the harm threatened by continued contumacy," the "probable effectiveness of any suggested sanction in bringing about [compliance]," and the contemnor's ability to pay. *Id.* (citations omitted).

Despite the PI Order, entered and served over three months ago, Defendants have continued to engage in willful and blatant violations of the PI Order. The terms of the PI Order are clear, and the record before the Court in this Motion demonstrates that Defendants are contemnors. They are now in violation of the PI Order and have done nothing to cease their infringing conduct, which is costing Plaintiff substantial reputational and goodwill damages.

Courts have imposed various types of civil contempt sanctions for violations of injunction orders, which generally serve either to coerce future compliance with the court's order or to compensate for losses resulting from past noncompliance. Those sanctions include:

- *Coercive fines* to ensure future compliance, *see e.g., Perfect Fit*, 673 F.2d at 56-57, *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 103 (2d Cir. 2016);

- *Compensatory fines* to compensate the complainant for any loss suffered due to the contemnor's actions, *see, e.g., Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir.1979), *Manhattan Indus.,* 885 F.2d at 6;

- *Attorneys' fees and costs* to pay the legal fees and other costs incurred by the complainant in enforcing the injunction, *see, e.g., New York State Nat'l Org. for Women v. Terry*, 94 F. Supp. 2d 465, 469-70 (S.D.N.Y. 2000);

- *Daily sanctions* until the contemnor complies with the injunction, appropriate for repeated violations, *see, e.g., Matter of Dickinson*, 763 F.2d 84, 89 (2d Cir. 1985);

- *Incarceration* when financial penalties are insufficient to secure compliance, *see, e.g., In re Cueto*, 443 F. Supp. 857, 863 (S.D.N.Y. 1978); and

- *Conditional orders* that conditionally impose sanctions, which can be lifted when the contemnor complies with the court's directives. *In re Chief Executive Officers Clubs, Inc.*, 359 B.R. 527 (S.D.N.Y. 2007).

Indeed, sanctions can be as varied as the circumstances require. For example, in *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281 (S.D.N.Y. 2000), a case in which a party failed to purge its infringement of the Versace trademark from the internet, the court sanctioned the party with a compensatory fine "equal to any and all profits earned from the sale of products advertised on any Internet site, unless he can demonstrate that the advertisement or sale was in undertaken compliance with [the Court's] Order." *Id.* at 296.

Here, we have Defendants who have completely ignored every single request, pleading, and *Court Order* in this case, all the while benefiting financially from infringing on Plaintiff's trademark. Thus, the challenge is to "design a remedy that will bring about compliance." Plaintiff's submit that the sanctions that will bring about compliance are a combination of (i) coercive fines -- $1,000 for every day Defendants fail to comply with the PI Order; (ii) compensatory fines – in the amount equal to any and all profits that Defendants earn from the sale of food products under the name "Bagel Toastery" or "Bagel Toasterie," and (iii) attorneys' fees and costs borne by Plaintiff in enforcing the PI Order. Those sanctions should be ordered by the Court because they are not punitive, but rather are reasonably designed to ensure compliance with this Court's PI Order. If the Defendants do not comply with these coercive measures within 30 days, then Plaintiff asks for leave to file another motion seeking additional and more coercive sanctions.

## CONCLUSION

Based on the foregoing and the clear and convincing evidence of their violations of the PI Order, Plaintiff respectfully requests that the Court hold Defendants in contempt for violating the PI Order and enter an order for sanctions as requested above.

**SANTOMASSIMO DAVIS LLP**

By: /s/ *Paul Salvatoriello*
Paul Salvatoriello
*Attorneys for Plaintiff Holiday Park Services, LLC*

Dated: August 19, 2024