**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
HOLIDAY PARK DRIVE, LLC,

                  *Plaintiff*,

                -against-

NEWIST CORP. *doing business as* Bagel
Toastery and Bagel Toasterie, ERDNIC "EDDIE"
KAYI and HATICE "JAY" ASLANTAS,

                  *Defendants*.

------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
23-cv-2623 (AMD) (JMW)

**A P P E A R A N C E S:**

        Paul Salvatoriello, Esq.
        **OGC Solutions LLP**
        1 Gatehall Drive, Suite 100
        Parsippany, NJ 07054
        *Attorney for Plaintiff*

        *No Appearance by Defendants*

**WICKS**, Magistrate Judge:

Plaintiff Holiday Park Drive, LLC ("Plaintiff"), commenced this action against Defendants

Newist Corp. d/b/a BAGEL TOASTERY and BAGEL TOASTERIE ("Newist Corp."), Erdnic

"Eddie" Kayi ("Kayi") and Hatice "Jay" Aslantas ("Aslantas") (collectively "Defendants") on

April 6, 2023, asserting claims for: (i) infringement of a Federally Registered Mark pursuant to 15

U.S.C. § 1114 ("Count I"), (ii) Federal Trademark Infringement, Unfair Competition, False

Designation of Origin and Passing Off pursuant to 15 U.S.C. § 1125(a) ("Count II"), (iii) Common

Law Unfair Competition and Trademark Infringement ("Count III"), and (iv) violations of New

York Consumer Protection Act pursuant to N.Y. Gen. Bus. Law § 349 ("Count IV"). (ECF No. 1.)

Plaintiff moved for default judgment and for a permanent injunction (i) as against the

individual defendants, Kayi and Aslantas (ECF No. 17), and (ii) as against the corporate defendant,

Newist Corp. (ECF No. 20), which were subsequently referred to the undersigned by the Hon. Ann M. Donnelly for a Report and Recommendation ("R&R"). (*See* Electronic Orders dated August 17, 2023 and February 14, 2024.) The R&R found the Defendants "intentionally and willfully infringed upon the Plaintiff's proprietary trademarks in violation of the Lanham Act[,]" and recommended that Plaintiff's Motions for Default Judgment (ECF Nos. 17, 20) as and against all Defendants for Counts I, II and III be granted, denied as to Count IV, and that a permanent injunction be entered against Defendants. (ECF No. 21.)

Specifically, the R&R recommended that this Court enter an Order providing that Defendants be "permanently enjoined from using Plaintiffs' proprietary trademarks, including Plaintiff's FAMOUS TOASTERY Mark, Plaintiffs TOASTERY Mark" and requiring Defendants to: (i) "immediately and permanently cease from doing business as 'Bagel Toastery' and/or 'Bagel Toasterie' ("Defendants' Infringing Designations")[,]" (ii) "immediately and permanently cease all use of Defendants' Infringing Designations online, including on any website or social media channel;" and (iii) "deliver to, or submit evidence satisfactory to Plaintiff of the destruction of all other labels, signs, prints, packages, wrappers, receptacles, advertising materials, promotional materials and marketing materials in Defendants possession, custody or control bearing the words and/or symbols that comprise trademark or trade names of Plaintiff, or any reproduction, counterfeit, copy, or colorable imitation thereof, and any means of making the same." (*Id.*)

Both motions for default judgment additionally sought "all reasonable attorney fees in accordance with 15 U.S.C. § 1117 and New York law." (ECF Nos. 17, 20.) The R&R noted that "under the Lanham Act, the Supreme Court has held that only an 'exceptional' case may be awarded attorney's fees" (ECF No. 21 at 29) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)) ("*Octane*" or "*Octane Fitness*"), and found that Plaintiff's

motions for default judgment "failed to provide any documentation, records or support regarding Plaintiff's entitlement to attorneys' fees and costs, or as to what the amounts should be[.]" (*Id.* at 29-30.) The R&R ultimately recommended that "Plaintiff's application for attorney's fees be denied, without prejudice and with leave to renew articulating how this is an 'exceptional' case, and with supporting documentation as to entitlement or amount of fees." (*Id.*)

On March 20, 2024, Judge Donnelly adopted the R&R in its entirety, granting Plaintiff's motion for default as Counts I, II, and III, and denying the motion as to Count V. (*See* Electronic Order dated March 20, 2024.) She additionally granted Plaintiff's motion for a permanent injunction, directed plaintiff to file a proposed order for a permanent injunction within thirty (30) days of the Order, and denied plaintiff's motions for attorney's fees "without prejudice to renew, as described in Judge Wicks' [R&R]." (*Id.*) Plaintiff subsequently filed its renewed motion for attorney's fees and proposed order for a permanent injunction on April 19, 2024 (ECF Nos. 23, 24), and Judge Donnelly entered an Order for Permanent Injunction on April 22, 2024, in accordance with the undersigned's previous recommendation and the proposed order submitted by Plaintiff (hereafter, the "Permanent Injunction"). (ECF No. 25.)

Now before the Court, on referral from District Judge Donnelly (*see* Electronic Orders dated April 22, 2024 and August 20, 2024) are: (i) Plaintiff's Motion for Attorney Fees (ECF No. 23); and (ii) Plaintiff's Motion for Contempt Sanctions against Defendants for alleged violations of the Permanent Injunction (ECF No. 31), which remain unopposed by Defendants.[1] For the reasons stated herein, Plaintiff's Motion for Attorney Fees (ECF No. 23) is **GRANTED** *in part* and **DENIED** *in part*, and Plaintiff's Motion for Contempt Sanctions (ECF No. 31) is **GRANTED**.

---

[1] To date, Defendants have not appeared in this action.

# **BACKGROUND**

The Court assumes the parties' familiarity with the factual background and procedural history of this case, as articulated in the R&R, and focuses on the background relevant to the instant Motion for Attorney's Fees and Motion for Contempt.

On April 19, 2024, Plaintiff filed its renewed Motion for Attorney's Fees and Costs pursuant to Federal Rule of Civil Procedure 54(d), seeking attorneys' fees and costs in the amount of $34, 723.60. (ECF No. 23.) Plaintiff contends the "Lanham Act affords the owner of a trademark owner the ability to seek reimbursement of its attorney fees in 'exceptional cases' pursuant to 15 U.S.C. § 1117(a)" and the instant case "is exceptional under Lanham Act because the Defendants intentionally and willfully infringed [Plaintiff's] FAMOUS TOASTERY trademarks by copying and using Holiday Park Drive's FAMOUS TOASTERY trademarks in Defendants' competing restaurant business." (ECF No. 23-1 at 4.) Plaintiff further asserts that Defendants "repeatedly ignored cease and desist letters and instead increased their use of Defendants' infringing marks in Defendants' advertising and promotion of Defendants' restaurant business." (*Id*.)

*First*, Plaintiff contends this case is "exceptional" pursuant to 15 U.S.C. § 1117(a) "as a result of Defendants' infringing behavior." (*Id*. at 9.) Plaintiff reiterates that it alleged in its Complaint, pursuant to 15 U.S.C. §§1114 and 1116, that: (i) Defendants, without the approval or authorization of Holiday Park Drive, adopted and began using Defendants' Infringing Designations in connection with Defendants' restaurant business; (ii) Defendants knowingly and willfully violated Plaintiff's rights in its FAMOUS TOASTERY Marks by using Defendants' Infringing Designations in connection with Defendants' restaurant business at the exact same location previously occupied by Plaintiff's Famous Toastery-branded restaurant and, further, that Defendants' Infringing Designations wholly incorporate Plaintiff's proprietary and coined

4

TOASTERY Mark and/or the confusingly similar term "Toasterie[;]" (iii) Defendants intentionally used Plaintiff's FAMOUS TOASTERY Marks in Defendants' Infringing Designations with the intent to attract consumers, knowing that consumers would likely believe, incorrectly, that use of Defendants' Infringing Designations signifies that Defendants' business is sponsored or endorsed by, or associated or affiliated with Plaintiff thereby boosting Defendants' restaurant business, resulting in damage to the "reputation, recognition and goodwill" associated with Plaintiff's distinctive FAMOUS TOASTERY Marks, "as well as less the capacity of [Plaintiff's] FAMOUS TOASTERY Marks to identify and distinguish products and services provided or endorsed by, or affiliated with, [Plaintiff], and thus, dilute the distinctive quality of [Plaintiff's] FAMOUS TOASTERY Marks and its FAMOUS TOASTERY-branded services." (*Id.* at 9-10.)

Plaintiff maintains Defendants "deliberately calculated their actions in an attempt to confuse and deceive the public and with full awareness of [Plaintiff's] rights in the FAMOUS TOASTERY Marks and TOASTERY Mark[,]" and that Defendants "intentionally ignored" multiple cease and desist letters, refused to cease their infringing activities, and "wholly ignored this action by failing to appear and to respond in any way to the claims against them[,]" such that reasonable attorneys' fees under 15 U.S.C. §1117(a) are warranted in this case. (*Id.*)

*Second*, Plaintiff argues the fees and costs sought by Plaintiff are reasonable. Plaintiff contends each respective firm and the attorneys, paralegals and staff working on this case charged rates that are within the reasonable range and comparable with those rates of firms specializing in trademark law, those in New York City, and those of comparable size and experience. (*Id.* at 10-11.) Specifically, the hourly rate for Jason M. Sneed, the founder and managing partner of SNEED PLLC, with over 26 years of experience, currently is $545.00. (*Id.*) Furthermore, the hourly rate

of Megan E. Sneed, an associate with SNEED PLLC, having approximately 10 years of experience, currently is $370.00, and the hourly rate for Ryan J. Cooper, principal of Cooper, LLC, with 18 years of experience is $400.00. (*Id.*) Plaintiff maintains the rates charged by the attorneys, paralegals and staff of SNEED PLLC and Cooper, LLC are reasonable as they are well within other rates courts in this area of practice and in Eastern District of New York and surrounding districts have held as reasonable. (*Id.*)

Plaintiff argues that it incurred significant costs and attorney fees in seeking to protect its intellectual property rights through the prosecution of this action, and that Defendants willfully and intentionally infringed on Plaintiff's rights in its FAMOUS TOASTERY Marks then refused to respond to or comply with the letters sent by counsel on behalf of Plaintiff placing Defendants on notice of the infringement. (*Id.*) Had Defendants responded to and complied with the letters sent by Plaintiff's counsel by ceasing use of Defendants' Infringing Designations in connection with Defendants' business, Plaintiff argued it would not have been forced to pursue this litigation and Plaintiff would not have incurred the attorneys' fees and costs involved with commencing and litigating this case. (*Id.*) As a result, Plaintiff contends it is entitled to a reimbursement of its attorney fees and costs incurred in this action and respectfully submits that Plaintiff be awarded $34,723.60 in reasonable attorney fees and costs. (*Id.*)

On April 22, 2024, District Judge Donnelly entered a Permanent Injunction against Defendants, which required, in relevant part, as follows:

> Defendants . . . [are] preliminarily and permanently enjoined and restrained from using on or in connection with the importation, sale, offering for sale, distribution, exhibition, display, or advertising of its goods or services under the infringing "Bagel Toastery" and "Bagel Toasterie" designations, or any other trademark or designation in combination with other words or symbols, or any other marks or symbols that are confusingly or deceptively similar to, or colorably imitative of Plaintiff's FAMOUS TOASTERY Marks;

As soon as possible, and no later than 21 days after this Injunction Order is entered by the Court and served on Defendants, Defendants . . . will destroy and/or change all literature, signage, labels, prints, packages, wrappers, containers, advertising materials, Internet content, stationary, software, and any other items in their possession or control that contain the infringing "Bagel Toastery" or "Bagel Toasterie" designations or any term confusingly similar to FAMOUS TOASTERY or TOASTERY, either standing alone or in combination with other words or symbols;

As soon as possible, and no later than 21 days after this Injunction Order is entered by the Court and served on Defendants, Defendants will cancel or amend any business name, trade name, assumed name, or corporate registration or application that contains Plaintiff's FAMOUS TOASTERY Marks, or any other confusingly similar name, logo, or mark, including but not limited to, registrations for "Bagel Toasterie;"

Within 30 days after this Injunction Order is entered by the Court and served on Defendants, Defendants are required to file with this Court and serve on Holiday Park Drive a report, in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the Injunction Order.

(ECF No. 25.)[2] In sum, the Permanent Injunction ordered Defendants: (i) to stop using the infringing "Bagel Toastery" and "Bagel Toasterie" designations, (ii) to destroy all items that contained the infringing designations within 21 days of the Permanent Injunction Order (hereafter, the "PI Order"), (iii) change their business name within 21 days of the PI Order, and (iv) file a sworn report with the Court explaining how they have complied with the PI Order within 30 days of the PI Order. (ECF No. 31-1 at 9.) Defendants were served with the PI Order on or around April 24, 2024. (*Id.*)

On August 19, 2024, Plaintiff reported that Defendants had "completely failed to comply with any part of the PI Order." (ECF No. 31-1 at 9.) Plaintiffs identified that "[p]hotos of the restaurant and screen shots of 'Bagel Toasterie's' website taken within the last few weeks show that Defendants are continuing their open and notorious infringement of Plaintiff's trademarks." (*Id.*) Plaintiff contends that Defendants should be held in contempt for violating the PI Order, and

---

[2] The Court further noted that any violation of the Permanent Injunction "may be punishable as a contempt of Court, in addition to any and all other remedies available at law or in equity." (*Id.*)

that the Court has authority to – and should issue – sanctions for contempt based on Defendants'
violations of the PI Order. (*Id*.) Plaintiff argues that contempt is "clearly warranted" in this case
because: (i) "there can be no dispute that the PI Order exists and is valid[;]" (ii) Defendants are
"well aware of [PI Order's] existence as they were properly served with [it;]" (iii) Defendants have
"not only failed to be 'reasonably diligent' in following the PI Order, [but] they have failed to
follow any part of the PI Order." (*Id*. at 11.)

Specifically, Plaintiff argues "[t]he evidence in the record proves that [Defendants] did not
cease using the infringing trademarks of "Bagel Toastery" or "Bagel Toasterie[,]" failed to destroy
all items that contained the infringing designations within 21 days of the PI Order, failed to change
their business name within 21 days of the PI, and failed to file a sworn report with the Court
explaining how they have complied with the PI within 30 days of the PI. (*Id*.) Plaintiff maintains
that "[d]espite the PI Order, entered and served over three months ago, Defendants have continued
to engage in willful and blatant violations of the PI Order" the terms of which, Plaintiff contends,
are clear." (*Id*.) Plaintiff argues that Courts have imposed various types of civil contempt sanctions
for violations of injunction orders, "which generally serve either to coerce future compliance with
the court's order or to compensate for losses resulting from past noncompliance." (*Id*. at 12.)

Plaintiff requests sanctions that, in Plaintiff's view, will "bring about [Defendants']
compliance [with the PI Order,]" including: (i) coercive fines – $1,000 for every day Defendants
fail to comply with the PI Order, (ii) compensatory fines – in the amount equal to any and all
profits that Defendants earn from the sale of food products under the name "Bagel Toastery" or
"Bagel Toasterie," and (iii) attorneys' fees and costs borne by Plaintiff in enforcing the PI Order.
(*Id*. at 13.) Plaintiff maintains its requested sanctions "are not punitive, but rather are reasonably

designed to ensure compliance with this Court's PI Order." (*Id.*) The Court considers Plaintiff's motions in turn.

## DISCUSSION

### I.    Motion for Attorney's Fees

#### A.    The "Exceptional Circumstances" Presented Here Warrant a Fee Award

Under the Lanham Act, the Supreme Court has held that only an "exceptional" case may be awarded attorney's fees. *Octane Fitness*, 572 U.S. at 554. "Exceptional" is defined as:

> one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Id.* at 544.

District courts have broad discretion to engage in a "case-by-case exercise" and consider the totality of the circumstances." *Id.*; *Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 268–69 (S.D.N.Y. 2022) (internal citations omitted) ("District courts are given wide latitude in the case-by-case exercise of their discretion, considering the totality of the circumstances[:] frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 166 (E.D.N.Y. 2016) ("*Innovation Ventures*") (internal citations omitted) ("In determining whether a case is 'exceptional' under the Lanham Act, the court must weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser.")  "Although the Second Circuit has not specifically addressed whether a default

is considered 'unreasonable' conduct under *Octane Fitness*, the Court shares the view of other courts in this district that a [d]efendant's default — standing alone — is not 'exceptional.'" *Antetokounmpo v. Costantino*, No. 21 Civ. 2198 (JMF) (JLC), 2021 WL 5916512, at *7 (S.D.N.Y. Dec. 15, 2021) (collecting cases) (internal quotation marks omitted), *R&R adopted*, 2022 WL 36232 (S.D.N.Y. Jan. 4, 2022).

Rather, "[e]xceptional circumstances include those where a party has willfully misappropriated a mark or has defended an action in bad faith." *Next Realty, LLC v. Next Real Est. Partners LLC*, No. 16CV6327JSGRB, 2019 WL 1757781, at *5 (E.D.N.Y. Mar. 11, 2019), *report and recommendation adopted*, No. 2:16-CV-06327, 2019 WL 1758447 (E.D.N.Y. Mar. 26, 2019); *see also Hilton v. Int'l Perfume Palace, Inc.*, No. 12-CV-5074 JFB GRB, 2013 WL 5676582, at *10 (E.D.N.Y. Oct. 17, 2013); *Champagne v. Diblasi*, 36 F. App'x 15, 19 (2d Cir. 2002) (collecting cases); *Focus Prod. Grp. Int'l, LLC*, 647 F. Supp. 3d at 268–69 (internal citations omitted) ("[W]hile "fraud, bad faith, or willful infringement are no longer required for a fee award, they remain highly relevant" post-*Octane*, … [t]hus, courts continue to hold claims of baselessness to a high bar, and most post-*Octane* cases awarding fees continue to involve substantial litigation misconduct.").

This case is an "exceptional" case such that attorney's fees are warranted under the circumstances. The R&R specifically found Defendants "intentionally and willfully infringed upon the Plaintiff's proprietary trademarks in violation of the Lanham Act" (*see* ECF No. 21), and, following the undersigned's issuance of the R&R on February 15, 2024, Defendants have infringed – and continue to infringe – upon Plaintiff's mark in direct violation of the PI Order issued by Judge Donnelly on April 22, 2024. *See* ECF Nos. 31-6, 31-7 (depicting picture of the front of Bagel Toasterie in Commack, NY, taken on July 20, 2024, and screen shots of Bagel Toasterie's

website, https://www.bageltoasterie.com/, taken on August 15, 2024); *see also* ECF No. 23-1 at 10 (identifying that Defendants "intentionally ignored" multiple cease and desist letters sent by Plaintiff, "refused to cease their infringing activities," and "wholly ignored this action by failing to appear and to respond in any way to the claims against them"); *see e.g.*, *Innovation Ventures*, 176 F. Supp. 3d at 167 ("[T]he court finds this case 'exceptional' with respect to the defendants that have infringed willfully"); *Next Realty, LLC*, No. 16CV6327JSGRB, 2019 WL 1757781, at *5 (internal citations omitted) (holding "evidence of defendants' extensive use of plaintiff's marks, which continued after the commencement of litigation, combined with their default, render[ed]" the case "exceptional . . . warranting an award of fees."); *Hartford-Jackson, LLC v. Hound's Tree Wines, LLC*, No. 20CV05322 (JMAARL, 2022 WL 3586571, at *5 (E.D.N.Y. Aug. 22, 2022) ("Defendant failed to respond to Plaintiff's demand letters and other communications sent over a number of years, even after Plaintiff's counsel alerted Defendant's managing member to the demand letters. Together with Defendant's failure to appear in this action—while continuing to sell infringing HIGHWIRE wine—Defendant's conduct has been unreasonable."); *Antetokounmpo v. Costantino*, No. 21CV2198 (JMF)(JLC), 2021 WL 5916512, at *8 (S.D.N.Y. Dec. 15, 2021), *report and recommendation adopted sub nom*. Antetokounmpo v. Constantino, No. 21-CV-2198 (JMF), 2022 WL 36232 (S.D.N.Y. Jan. 4, 2022) (collecting cases) (defaulting defendant's failure to respond to a cease-and-desist letter or appear in the action constitutes an "exceptional case" under the Lanham Act); *see also Am. Soc'y for Prevention of Cruelty to Animals v. J.C. Clothing Drive, Inc.*, No. 19-CV-4401, 2020 WL 93884, at *3 (E.D.N.Y. Jan. 7, 2020) (defendant's decision to ignore the lawsuit and the motion for a default judgment , in combination with its determination to "not respond to the multiple attempts that [plaintiff] made prior to commencing litigation to get it to cease and desist, leaving an absence of any plausible reason for using [plaintiff]'s marks"

11

renders the default judgment case "exceptional"); *Cf. Champagne*, 36 F. App'x at 19 (holding the district court's denial of attorney's fees to plaintiff was appropriate where there was "no indication of willful misappropriation or bad faith" where, shortly after the suit was commenced, "defendants, without conceding any liability, agreed to the entry of a permanent injunction prohibiting them from using the name 'Champagne' for their group . . [a]nd, plaintiff failed to establish an essential element of its claim for damages.").

Accordingly, Plaintiff is entitled reasonable attorneys' fees under 15 U.S.C. §1117(a). That said, the undersigned now turns to the issue of whether Plaintiff's requested fee amount is reasonable. *See e.g.*, *Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, No. 15-CV-5826 (CBA) (LB), 2022 WL 17977495, at *11–12 (E.D.N.Y. Dec. 28, 2022), *aff'd sub nom. Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, No. 23-446-CV, 2024 WL 4297472 (2d Cir. Sept. 26, 2024) ("*Abbott Labs*") ("[D]efendants' willfulness is established by the pleadings upon default. Moreover, consideration of the totality of the circumstances and relevant factors confirms that this case stands out from the others and is indeed exceptional. Particularly, and for the reasons discussed in the preceding section, (1) the need for deterrence is manifest; and (2) the defendants' litigation misconduct was objectively unreasonable and added substantially to the costs and fees associated with this case.") As explained further below, Plaintiff additionally seeks the costs necessary to prosecute the infringement. *See infra*, Section I.B. Assessment of Reasonable Costs and Fees. "The Lanham Act ... provides for the award of costs in all cases [and] [o]ut-of-pocket litigation costs are generally recoverable if they are necessary for the representation of the client." *Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999) (citing 15 U.S.C. § 1117(a)); *see also Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 210 (E.D.N.Y. 2008) ("Courts generally award costs to prevailing parties in cases involving

violations of the Lanham Act."). For the same reasons identified in the attorneys' fee award, the undersigned concludes that Plaintiff is also entitled to recover reasonable costs. *See e.g.*, *Abbott Labs*, No. 15-CV-5826 (CBA) (LB), 2022 WL 17977495, at *11–12.

### B.   Assessment of Reasonable Costs and Fees

Plaintiff requests reimbursement of attorney's fees and expenses calculated as follows: (i) legal fees and expenses from SNEED PLLC in the amount of $28,576.60,[3] and (ii) legal fees and expenses from Cooper, LLC in the amount of $6,147.00,[4] for a total of $34,723.60 in overall fees and expenses. *See* ECF Nos. 23-2 at 3, 23-3 at 2. Specifically, Plaintiff seeks legal fees as follows:

| Firm | Attorney Name | Position | Hourly Rate | Hours Billed |
|------|---------------|----------|-------------|--------------|
| SNEED PLLC | Jason M. Sneed | Managing Attorney | $545.00 | 8.20 |
| Cooper, LLC | Ryan J. Cooper | Managing Attorney | $400.00 | 15.10 |
| SNEED PLLC | Megan E. Sneed | Associate | $370.00 | 52.90 |
| SNEED PLLC | Maya R. Pillai | Summer Associate | $195.00 | 14.17 |
| SNEED PLLC | Kaitlin Toruk | Case Clerk and Assistant | $95.00 | 1.10 |

*See id*. This Court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011). The lodestar calculation, which is "the

---

[3] Of the requested amount, SNEED PLLC seeks expenses as follows: (i) shipping costs associated with mailing cease and desist package to Defendants in the amount of $39.10; (ii) costs "associated with the investigation into the ownership of Bagel Toasterie/Toastery and location of Defendants in preparation for drafting and filing of the complaint[,]" paid to VAUDRA INTERNATIONAL, in the amount of $1,620.00. *See* ECF No. 23-2 at 9, 19.

[4] Cooper, LLC asserts that out of the $6,147.00 in total legal fees and expenses, Plaintiff's expenses amounted to $402.00, which represents the fee associated with the filing of the Complaint in the United States District Court for the Eastern District of New York. *See* ECF No. 23-3 at 2.

product of a reasonable hourly rate and the reasonable number of hours required by the case,"

"creates a 'presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir.

2011). "A party seeking an award of attorney's fees bears the burden to document 'the hours

reasonably spent by counsel, and thus must support its request by providing contemporaneous time

records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature

of the work done.'" *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds

Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty Signs, Inc.*, No. CV 10-1737

(ADS)(AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation

adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011). Therefore, the Court reviews Plaintiff's

Counsels' claimed hourly rate and contemporaneous billing records to determine the

reasonableness of the requested fee.

  *First*, "[a] reasonable hourly rate is "'the rate a paying client would be willing to pay,'

based on the 'prevailing [hourly rate] in the community ... where the district court sits.'" *E. Sav.

Bank, FSB v. Whyte*, No. 13-cv-6111 (CBA)(LB), 2015 WL 790036, at *8 (E.D.N.Y. Feb. 24,

2015) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d

182, 190 (2d Cir. 2007)). In assessing a reasonable hourly rate, the Court takes into consideration

the market rate "prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation." *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The relevant "'community' for purposes of this calculation is the district where the district court

sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190. This has been coined

by the Second Circuit as the "forum rule." *Bergerson v. New York State Off. of Mental Health,

Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) ("This Circuit's forum rule

generally requires use of the hourly rates employed in the district in which the reviewing court sits

in calculating the presumptively reasonable fee") (quotes omitted). "The party applying for fees must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates." *Gesualdi v. Bestech Transp., LLC*, No. 14-CV-1110(JS)(ARL), 2022 WL 866853, at *2 (E.D.N.Y. 2022). "The court may reduce the hours spent on the litigation to exclude excessive, redundant, or otherwise unnecessary time." *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, No. 04-CIV-3531 (LTS) (SLC), 2020 WL 91504, at *4 (S.D.N.Y. Jan. 8, 2020).

Jason M. Sneed, Esq. is the managing attorney of SNEED PLLC, and is admitted to practiced law for over 26 years, primarily in the area of trademark and copyright prosecution and litigation. *See* ECF No. 23-2 at 2. According to his Declaration in Support of Attorney's Fees, prior to founding SNEED PLLC in 2011, he practiced law for 14 years with national firms in Kansas and North Carolina, including Alston & Bird LLP where he served as a Partner and Charlotte Group Leader for the Trademark and Copyright Practice Group. *See id*. Furthermore, he has been recognized for excellence in intellectual-property law and litigation by *Best Lawyers®* (since 2013)*, North Carolina Legal Elite™, IP Stars®* and *Super Lawyers®* (Rising Stars from 2010–11; Super Lawyers since 2012). *Id*. Megan E. Sneed Esq. is an associate with SNEED PLLC, who obtained her license to practice in the State of North Carolina in August 2008, and, prior to joining SNEED PLLC, worked for several firms and companies, including a patent-prosecution firm in Houston. *Id.*

Ryan J. Cooper, Esq. is the founder and managing attorney of Cooper, LLC, and has practiced law for over 17 years, primarily in the areas of commercial litigation, including copyright litigation. *See* ECF No. 23-3 at 1-2. Prior to founding Cooper, LLC in 2016, Mr. Cooper served as a law clerk for now-Chief Judge (then-District Judge) Renée Marie Bumb, of the United States District Court for the District of New Jersey, and practiced commercial litigation: (i) with the

international law firm of Morgan Lewis & Bockus, LLP law for three years, (ii) with the national law firm Lowenstein Sandler, LLP for four years, and (iii) with Pashman Stein, PC. *See id*. According to his Declaration in Support of Attorney's Fees, Mr. Cooper has twice been appointed to the New Jersey Supreme Court's District Ethics Committee, which he served on for seven years, and has been "recognized for excellence in [his] practice areas by Thomson Reuters through a process of peer nominations and evaluations." *Id*.

Maya R. Pillai is a third-year law student at Wake Forest University School of Law and worked as a summer associate with SNEED PLLC from May 2023 through July 2023, during which time she assisted with this matter by "conducting case law research, drafting documents and participating in conferences." *See* ECF No. 23-2 at 2. Kaitlin Toruk served as a case clerk and assistant to SNEED PLLC from the Fall of 2022 through the Summer of 2023, during which time she assisted with "document management and retention for this matter." *See id*.

As recently as July 2024, Judges within the Eastern District have held that "hourly rates 'generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience.'" *Gordon v. Chambers*, No. 20-CV-696, 2024 WL 3533876, at *15 (E.D.N.Y. July 25, 2024) (internal citations omitted) (collecting cases); *see also Interpool, Inc.*, No. 22 CV 1103, 2022 WL 17335670, at *4; *McLaughlin v. IDT Energy*, No. 14 CV 4107, 2018 WL 3642627, at *17 (E.D.N.Y. July 30, 2018) (finding award of rates typical to the Eastern District and noted to be: "$550 for partners/equity owners with more than thirty years of experience, $500 for partners/equity owners with more than fifteen years of experience, $450 for partners/equity owners with more than ten years of experience, $400 for senior associates/associates with more than ten years of experience, $350 for senior associates/associates with six to nine years of

16

experience, $300 for associates with three to five years of experience, $250 for associates with fewer than three years of experience").

Higher rates are approved where the party applying for fees supports the hourly rate with evidence such as counsel's extensive expertise, experience before the federal bar, and specialization required to litigate the matter. *Williamsburg Climbing Gym Co. LLC*, 2023 WL 1072952 at *4; *Chrysafis v. Marks*, 21-CV-2516(GRB)(AYS), 2023 WL 6158537, at *5 (E.D.N.Y. Sep. 21, 2023) (internal citations omitted) ("The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields. Such attorneys have typically shown involvement in teaching and speaking engagements and other academic and professional achievements, writings published in scholarly and professional journals, or appearances as an expert in the media, etc.").

Specifically, in the intellectual property litigation arena, this District has found between $300 and $785 per hour appropriate for partners with similar, if not more experience than Mr. Sneed and Mr. Cooper, and between $200 and $595 per hour for associates with experience similar to Ms. Sneed.[5] *See e.g.*, *Am. Soc'y for Prevention of Cruelty to Animals*, No. 19-CV-4401 (BMC), 2020 WL 93884, at *4 (E.D.N.Y. Jan. 7, 2020) (finding partner hourly rates of $550–$785 and associate hourly rates of $420–$595 in connection with trademark infringement default judgment reasonable and noting the rates were "consistent with other rates among large New York law firms

---

[5] Plaintiff's Counsels' "specialization in intellectual property litigation merits somewhat higher rates than normal for this district." *Gen. Nutrition Inv. Co. v. Gen. Vitamin Centers, Inc.*, 817 F. Supp. 2d 66, 76 (E.D.N.Y. 2011); *see also Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 04–CV–2293, 2009 WL 5185808, at * 5 (E.D.N.Y. Dec. 23, 2009), *aff'd*, 409 Fed. Appx. 389 (2d Cir.2010) ("[B]ecause intellectual property matters such as this one require specialized knowledge, courts in this district have approved higher hourly rates than those generally awarded.").

for intellectual property work that practice in this district."); *Value Wholesale, Inc. v. KB Ins. Co.*, No. 18-CV-5887(KAM)(SMG), 2020 WL 6393016, at *5 (E.D.N.Y. Nov. 2, 2020) (finding rates of $550 per hour for partners, and $325 for associates to be reasonable rates "for a paying client to incur in connection with a complex trademark infringement suit"); *Emerson Elec. Co. v. Asset Mgmt. Assocs. of New York, Inc.*, No. 16-CV-1390 (PKC) (SIL), 2024 WL 2387406, at *3 (E.D.N.Y. May 23, 2024) (finding principal of firm's rates of $350 per hour to $400 per hour reasonable where principal "had more than 30 years of experience as a trial and appellate lawyer in state and federal courts, focusing on, *inter alia*, commercial and corporate litigation; copyright, trademark, trade secret, and unfair competition litigation" and finding the principal's firm rate for associates of $225 per hour to $275 per hour also reasonable); *ID Tech LLC v. Toggle Web Media LLC*, No. 20-CV-05949 (EK) (RER), 2023 WL 10553658, at *3 (E.D.N.Y. Oct. 10, 2023), *report and recommendation adopted*, No. 20-CV-5949(EK)(RER), 2024 WL 1332725 (E.D.N.Y. Mar. 28, 2024) (collecting cases) (finding associate's rate of $300 per hour reasonable where the associate: (i) practiced law in the Southern and Eastern Districts of New York as well as in the New York state court system since 2019, (ii) acted as lead counsel in many intellectual property enforcement cases, and other complex business and commercial litigation cases, and (iii) briefed and appeared for an oral argument on the motion to dismiss in the instant case, and further noting "[t]he rate requested is also commensurate with the rates approved for associates in other intellectual property cases"); *Rudler v. Houslanger & Assocs., PLLC*, No. 18CV7068SFJAYS, 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020) (internal citations omitted) ("The prevailing rates for attorneys in the E.D.N.Y. are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates."); *Hartford-Jackson, LLC*, No. 20CV05322 (JMA) (ARL), 2022 WL 3586571, at *5.

Accordingly, "upon review of the declaration and exhibits in support of [P]laintiff's motion for attorneys' fees and costs, and upon consideration of the *Johnson* factors[6] and the prevailing local hourly rates discussed above," the Court finds that the uncontested rates of $545.00 per hour for Mr. Sneed, $400.00 for Mr. Cooper, and $370.00 per hour for Ms. Sneed eminently "reasonable and will use them to calculate the lodestar for [P]laintiff's [trademark infringement] claim against [Defendant]." *Houston v. Cotter*, 234 F. Supp. 3d 392, 402–03 (E.D.N.Y. 2017); *Emerson Elec. Co. v. Asset Mgmt. Assocs. of New York, Inc.*, No. 16-CV-1390 (PKC) (SIL), 2024 WL 2387406, at *3 (E.D.N.Y. May 23, 2024) ("These rates reasonably correspond to each attorney's level of experience and fall within the range of generally acceptable rates that have been approved by courts in this District.").

Likewise, the undersigned finds Kaitlin Toruk's rate of $95.00 per hour reasonable in light of recent Eastern District awards for legal assistants and law clerks. *See e.g.*, *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, & Skill Improvement & Saftey Funds v. Genrus Corp.*, No. 20 CV 1837 (EK)(RML), 2022 WL 4586316, at *6 (E.D.N.Y. June 14, 2022), *report and recommendation adopted sub nom. Trustees of Pavers & Rd. Builders Dist. Council Welfare Pension, Annuity & Apprenticeship, & Skill Improvement & Safety Funds*

---

[6] The undersigned has considered "'all case-specific variables' including the factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974) in determining the reasonable hourly rate[:] . . . (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases[,]" and finds that the majority of the factors weigh in favor of assigning a lesser fee than requested. *Chrysafis*, 21-CV-2516(GRB)(AYS), 2023 WL 6158537 at *4 (internal citations omitted) ("The Second Circuit instructed district courts to consider all case-specific variables including the factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974) in determining the reasonable hourly rate. However, the Court need not robotically recite and make separate findings as to all twelve of the *Johnson* factors.").

*v. Genrus Corp.*, No. 20-CV-1837(EK)(RML), 2022 WL 4586348 (E.D.N.Y. Sept. 29, 2022) (holding the requested rate of $80 for the work of the legal assistants on this case to be reasonable) (collecting cases); *Trustees of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols. LLC*, No. 19CV6576LDHPK, 2021 WL 7908025, at *10 (E.D.N.Y. Mar. 13, 2021) ("Courts in this district have reduced the legal rates for legal assistants where their backgrounds are not described.. . . [the Court] therefore finds that the reasonable hourly rates for these legal assistants is $100.00."); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Cooperation, Pension & Welfare Funds v. Sanders Constr., Inc.*, No. 13-CV-5102 JFB ARL, 2015 WL 1608039, at *4 (E.D.N.Y. Apr. 10, 2015) ($90 is a reasonable hourly rate for the work of legal assistants); *see also Gesualdi v. Bedford Container Servs., Inc.*, No. 19 CV 4183, 2020 WL 6370165, at *6 (E.D.N.Y. Aug. 13, 2020), *report and recommendation adopted in part*, No. 19 CV 4183, 2020 WL 5248860 (E.D.N.Y. Sept. 3, 2020) (awarding an unadmitted law clerk $85 per hour and noting that "[l]aw clerks are usually awarded the same hourly rate as paralegals in this District"); *Trs. of Ne. Carpenters Health, Pension Annuity, Apprenticeship, and Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp.*, 17 CV 5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018) (Courts in this district typically award hourly rates ranging from $70 to $100 for paralegals).

However, the undersigned finds the $195.00 hourly rate sought by Plaintiff for Ms. Pillai "far exceed[s] the presumptively reasonable rates that courts approve in similar circumstances in the Eastern District of New York" for the work of summer associates. *Streamlight, Inc. v. Gindi*, No. 18-CV-987 (NG), 2019 WL 6733022, at *19 (E.D.N.Y. Oct. 1, 2019), *report and recommendation adopted*, No. 18-CV-987 (NG) (RLM), 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019). "Summer associates are paid similarly to paralegals in this district." *Schwartz v. United States Drug Enf't Admin.*, No. 13CV5004CBAST, 2019 WL 1299192, at *9 (E.D.N.Y. Mar. 1,

2019), *report and recommendation adopted*, No. 13CV5004CBAST, 2019 WL 1299660 (E.D.N.Y. Mar. 21, 2019); *Streamlight, Inc.*, No. 18-CV-987 (NG), 2019 WL 6733022, at *19 (collecting cases) ("Rates in intellectual property cases in this District generally range from. . . $100 to $200 for junior associates, and $70 to $100 for paralegal assistants."); *Allied 100, LLC v. Chadha*, No. 20CV03493AMDPK, 2021 WL 7184241, at *12 (E.D.N.Y. July 26, 2021) (collecting Eastern District cases awarding between $75 and $120 per hour for paralegals, and awarding senior paralegals in the case $120 per hour where they had over 20 years of experience); *FERNAN Y. JARAMILLO, individually & on behalf of all employees similarly situated, Plaintiffs, v. LATINO REGAL CORP. d/b/a El Tucanazo Bar, et al., Defendants*, No. 19 CV 3104 (HG) (CLP), 2024 WL 4648135, at *20 (E.D.N.Y. Sept. 4, 2024) (internal citations omitted) ("For paralegals and law clerks, an hourly rate of $120 sits at the higher end of the rates typically awarded in this district." ).  To be clear, this is no finding or conclusion as to her ability, rather the reduction is based upon her role.

"Here, there are no unique circumstances that would justify a departure from the prevailing market rates [for summer associates] in this district." *Cidoni v. Woodhaven Ctr. of Care*, No. 221CV03654JMAJMW, 2023 WL 2465167, at *4 (E.D.N.Y. Mar. 10, 2023); *see also Aponte v. 5th Ave. Kings Fruit & Vegetables Corp.*, No. 20-CV-5625 (RLM), 2022 WL 17718551, at *2 (E.D.N.Y. Dec. 15, 2022) ("The party seeking a fee award bears the burden of establishing the reasonableness of the rates charged and the necessity for the hours spent"); *see e.g.*, *Guinea v. Garrido Food Corp.*, No. 19 CV 5860, 2020 WL 136643, at *2 (E.D.N.Y. Jan. 13, 2020) (hourly rate of $125-$175 for paralegal time was "reasonable" where the "paralegal [was] a foreign certified lawyer who assisted with Spanish translation services for plaintiff" and noting that "top paralegal rate seems a bit high"). Plaintiff does not provide authority this District in which a

21

summer associate, paralegal, or law clerk was awarded $195.00 per hour as it seeks here. *See e.g.*, *Blonder v. Indep. Cap. Recovery, LLC*, No. 21-CV-912 (ARR) (AYS), 2023 WL 2236908, at *3 (E.D.N.Y. Feb. 27, 2023) ("Notably, [plaintiff] does not cite a single case from this district in which counsel was awarded the hourly rates sought in this case"). Accordingly, applying the range of $70 to $120 per hour for paralegals that is accepted in this District, the Court concludes that $100 per hour is an appropriate rate for Ms. Pillai. *See e.g.*, *FERNAN Y. JARAMILLO, individually & on behalf of all employees similarly situated, Plaintiffs,* No. 19 CV 3104 (HG) (CLP), 2024 WL 4648135, at *20 (recommending rates of $100 per hour for law clerks "given the current acceptable rates for paralegals and law clerks" and because the clerks in the case "billed significant hours on the case" and "provided meaningful support to attorneys by conducting legal research, drafting documents, and communicating in Spanish with the plaintiff.").

*Second*, "[a]ttorneys must submit contemporaneous records with their fee applications to document the hours reasonably billed." *Id.* at *5 (citing *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010)). In assessing a fee application and the supporting documentation, the Court should not include "excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). This does not mean that Courts should become "green-eyeshade accountants" but merely that the court has discretion to deduct a reasonable percentage of hours as a "practical means of trimming fat from a fee application." *Allied 100, LLC*, 2021 WL 7184241 at *12. Here, Plaintiff's counsel provided billing records with an itemized breakdown of hours and descriptions of each task conducted. *See generally*, ECF Nos. 23-2, 23-3; *see also New York Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (noting that fee applications should include "contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done."). These records are

authenticated by the supporting declarations. *See* ECF No. 23-2 at 1-3; 23-3 at 1-3.  Of the requested fees, managing attorneys completed 23.3 hours of work, while the associate, paralegals and support staff completed 52.90, 14.17, and 1.10 hours of work, respectively.

The tasks performed – specifically, "consulting with the client, drafting the complaint . . ., conducting legal research, and preparing the default judgment motion papers" – and "hours expended generally appear reasonable on the information provided." *Curves Int'l, Inc. v. Negron*, No. CV 11-2986 ADS GRB, 2012 WL 4490542, at *6 (E.D.N.Y. Aug. 31, 2012), *report and recommendation adopted*, No. 11-CV-2986 (ADS) (WDW), 2012 WL 4490553 (E.D.N.Y. Sept. 28, 2012); *Next Realty, LLC v. Next Real Est. Partners LLC*, No. 16CV6327JSGRB, 2019 WL 1757781, at *6; *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 300 (E.D.N.Y. 2015) (awarding $70,612.50 in attorney's fees for the work of four partners on the case, and noting "given that this is a commercial litigation involving relatively high dollar amounts and an appropriation of intellectual property . . .plaintiff is entitled to recover the rate that a substantial commercial litigation firm would reasonably have charged plaintiff to enforce its rights in its intellectual property and its reputation"); *Eu Yan Sang Int'l Ltd. v. S & M Enterprises (U.S.A.) Enter. Corp.*, No. 09-CV-4235 (RRM) (RER), 2010 WL 3824129, at *8 (E.D.N.Y. Sept. 8, 2010), *report and recommendation adopted sub nom. Eu Yan Sang, Int'l LTD. v. S & M Enterprises (U.S.A) Enterprises Corp.*, No. 09-CV-4235 (RRM) (RER), 2010 WL 3806136 (E.D.N.Y. Sept. 23, 2010) (awarding $41,983.00 in attorney's fees after "reviewing the contemporaneous time records submitted by Plaintiff's counsel, and taking into account Plaintiff's difficulty in locating information about the defendants, the fact that Plaintiff is based overseas, and the hours expended on the settlement agreement" and  finding "that the number of hours expended on this case, though higher than the number of hours normally expended on a motion for default in a trademark

infringement case, is reasonable."); *Value Wholesale, Inc.*, No. 18-CV-5887(KAM)(SMG), 2020 WL 6393016, at *6 (holding the total hours expended by attorneys appeared to be reasonable "given the context that it was a complex trademark dispute in federal court that remains pending five years after it was filed."); *ID Tech LLC*, No. 20-CV-05949 (EK) (RER), 2023 WL 10553658, at *4 (finding 67.35 hours of legal work performed in intellectual property enforcement case to be reasonable); *see e.g.*, *Hartford-Jackson, LLC v. Hound's Tree Wines, LLC*, No. 20CV05322JMAARL, 2022 WL 3586571, at *5 (E.D.N.Y. Aug. 22, 2022) (awarding $36,096.75 in attorney's fees under the Lanham Act and finding the requested hourly rates and the total hours expended to be reasonable in trademark in default trademark infringement suit).

*Au fond*, the Court awards of attorney's fees as follows:

| Firm | Attorney Name | Hours Requested | Hours Awarded | Rate Requested | Rate Awarded | Hours X Rate Awarded |
|------|---------------|-----------------|---------------|----------------|--------------|----------------------|
| SNEED PLLC | Jason M. Sneed | 8.20 | 8.20 | $545.00 | $545.00 | $4,469.00 |
| SNEED PLLC | Megan E. Sneed | 52.90 | 52.90 | $370.00 | $370.00 | $19,573.00 |
| SNEED PLLC | Maya R. Pillai | 14.17 | 14.17 | $195.00 | $100.00 | $1,417.00 |
| SNEED PLLC | Kaitlin Toruk | 1.10 | 1.10 | $95.00 | $95.00 | $104.50 |
| **Total SNEED PLLC** | -- | **76.37** | **76.37** | -- | -- | **$25,563.50** |
| Cooper, LLC | Ryan J. Cooper | 15.10 | 15.10 | $400.00 | $400.00 | $6,040.00 |
| **Total Cooper LLC** | -- | **15.10** | **15.10** | -- | -- | **$6,040.00** |
| **Total** | | **91.47** | **91.47** | -- | -- | **$31,603.50** |

The Court additionally awards both SNEED PLLC and Cooper LLC their requested expenses and costs. As stated, Cooper LLC requests $402.00 in total expenses, which "represents the fee associated with the filing of the Complaint in the United States District Court for the Eastern District of New York." *See* ECF No. 23-3 at 2; *see e.g.*, *Hartford-Jackson, LLC*, No. 20CV05322 (JMA) (ARL), 2022 WL 3586571, at *5 (awarding plaintiff "$740.00 in costs, which represents the amount Plaintiff expended on filing fees and service of process" and noting: (i) "courts generally award costs to prevailing parties in cases involving violations of the Lanham Act" and (ii) "[f]iling fees and service of process are reasonable out-of-pocket expenses that are customarily compensable.").

SNEED PLLC seeks expenses as follows: (i) shipping costs associated with mailing cease and desist package to Defendants in the amount of $39.10; (ii) costs "associated with the investigation into the ownership of Bagel Toasterie/Toastery and location of Defendants in preparation for drafting and filing of the complaint[,]" paid to VAUDRA INTERNATIONAL, in the amount of $1,620.00. *See* ECF No. 23-2 at 9, 19; *Eu Yan Sang Int'l Ltd.*, No. 09-CV-4235 RRM RER, 2010 WL 3824129, at *8 (collecting cases) (noting that "[r]ecovery of private investigator fees has been permitted in trademark cases as part of an award of attorneys' fees" and recommending an award of $3,266.25 in private investigator fees); *Curves Int'l, Inc.*, No. CV 11-2986 ADS GRB, 2012 WL 4490542, at *7 (awarding plaintiff filing fees, the process service fee, and postage). These costs are all supported by the record.

In sum, Plaintiff's Motion for Attorney's fees and expenses is granted in part as follows: (i) legal fees ($25,563.50) and expenses ($1,659.10) awarded to SNEED PLLC in the amount of $27,222.60, and (ii) legal fees ($6,040.00) and expenses ($402.00) awarded to Cooper, LLC in the amount of $6,442.00, for a total of $33,664.60 in overall fees and expenses.

## II.    **Motion for Contempt**

"[D]istrict courts have the inherent power to find a party in contempt for bad faith conduct violating the court's orders." *S. New England Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 144 (2d Cir. 2010). "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Utica Coll. v. Gordon,* 389 Fed. App'x 71, 72 (2d Cir.2010) (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs.,* Inc., 369 F.3d 645, 655 (2d Cir.2004)); *Schmidt v. Stone*, No. 14-CV-2519 (RJD) (CLP), 2019 WL 3253953, at *5 (E.D.N.Y. July 18, 2019) (internal quotations and citations omitted) ("There are three essential elements which must be established before a party can be held in civil contempt: 1) there must be an order that is clear and unambiguous; 2) the proof of non-compliance with that order must be clear and convincing; and 3) it must be shown that the contemnor has not been reasonably diligent and energetic in attempting to accomplish what was ordered."). "A defendant's conduct need not be willful in order for the defendant to be found in contempt." *Yurman Studio, Inc. v. Castaneda*, Nos. 07-cv-1241 (SAS), 07-cv-7862 (SAS), 2009 U.S. Dist. LEXIS 13870, at *6 (S.D.N.Y. Feb. 23, 2009). Due process requires that a person receive notice and an opportunity to be heard before imposing sanctions for civil contempt. *Sanchez v. Pathmark stores,* 04 Civ. 1159, 2009 WL 398103, at *1 (S.D.N.Y. Feb. 17, 2009).[7]

---

[7] Preliminarily, the undersigned notes Defendants were properly served with the PI Order on or around April 24, 2024. *See* ECF No. 31-1 at 9.

"Upon finding that a party is in civil contempt, this Court retains 'broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions.'" *CBS Broad. Inc. v. FilmOn.com, Inc.*, No. 10 CIV. 7532 NRB, 2014 WL 3702568, at *3 (S.D.N.Y. July 24, 2014), *aff'd*, 814 F.3d 91 (2d Cir. 2016) (quoting *City of New York v. Venkataram,* No. 06 Civ. 6578(NRB), 2012 WL 2921876, at *3 (S.D.N.Y. July 18, 2012)). "The purposes of civil contempt sanctions are twofold: to coerce a defendant into compliance with a court order and to compensate a plaintiff for losses incurred." *Id*. (citing *Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.,* 478 U .S. 421, 443 (1986)); *see also Jolen, Inc. v. Kundan Rice Mills, Ltd*., No. 19-CV-1296 (PKC), 2019 WL 2949988, at *4 (S.D.N.Y. July 9, 2019) ("Civil contempt sanctions serve a dual purpose: to secure future compliance with court orders and to compensate the party that has been wronged.").

## A.    <u>Defendants Are in Contempt of the Preliminary Injunction</u>

Here, the undersigned finds Defendants in civil contempt for their violation of the PI Order. *First*, the undersigned finds the PI Order clearly and unequivocally directed Defendants: (i) to stop using the infringing "Bagel Toastery" and "Bagel Toasterie" designations, (ii) to destroy all items that contained the infringing designations within 21 days of the PI Order, (iii) change their business name within 21 days of the PI Order, and (iv) file a sworn report with the Court explaining how they have complied with the PI Order within 30 days of the PI Order. *See* ECF No. 31-1 at 9. The PI Order explicitly warned that "[a]ny violation of this Injunction Order may be punishable as a contempt of Court, in addition to any and all other remedies available at law or in equity[.]" *See* ECF No. 25; *see also Nat'l Liab. & Fire Ins. Co. v. Rick's Marine Corp.*, No. 15-CV-6352 (DRH) (ARL), 2021 U.S. Dist. LEXIS 90391, at *6 (E.D.N.Y. May 12, 2021) ("A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is address, who must be

able to ascertain from the four corners of the order precisely what acts are [required or] forbidden."); *see e.g.*, *Aquavit Pharmacueticals, Inc. v. U-Bio Med, Inc*., No. 19CV3351VECRWL, 2021 WL 4312579, at *3 (S.D.N.Y. July 16, 2021), *report and recommendation adopted as modified sub nom. Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351 (VEC), 2021 WL 3862054 (S.D.N.Y. Aug. 30, 2021) (finding an injunction "clear and unambiguous" where it "prohibit[ed] Defendants from engaging in an extensive array of actions involving use of [Plaintiff's] Marks in the U.S., South Korea, and everywhere else except for the countries where Defendants own registrations for the Marks" and explicitly warned that "any violation by Defendants [of the injunction] 'may be considered and prosecuted as a contempt of this Court.'"); *CBS Broad. Inc*., No. 10 CIV. 7532 NRB, 2014 WL 3702568, at *3–4 (quoting *Drywall Tapers & Pointers v. Local 530,* 889 F.2d 389, 395 (2d Cir.1989)) (an "injunction is sufficiently clear and unambiguous to warrant a finding of contempt against a violating party if it leaves 'no doubt in the minds of those to whom it was addressed . . .precisely what acts are forbidden'… it is not required to "list every potential transmission mechanism that it bars.").

*Second*, Plaintiff has submitted "clear and convincing" proof of Defendants' non-compliance with the PI Order. Specifically, Plaintiff identified that "[p]hotos of the restaurant and screen shots of 'Bagel Toasterie's' website taken within the last few weeks show that Defendants are continuing their open and notorious infringement of Plaintiff's trademarks." *See* ECF No. 31-1 at 9;  ECF Nos. 31-6, 31-7 (depicting picture of the front of Bagel Toasterie in Commack, NY, taken on July 20, 2024,  and screen shots of Bagel Toasterie's website, https://www.bageltoasterie.com/, taken on August 15, 2024); *see also* ECF No. 23-1 at 10 (identifying that Defendants "intentionally ignored" multiple cease and desist letters sent by Plaintiff, "refused to cease their infringing activities," and "wholly ignored this action by failing

to appear and to respond in any way to the claims against them"); *see e.g.*, *Aquavit Pharmacueticals, Inc.*, No. 19CV3351 (VEC) (RWL), 2021 WL 4312579, at *9 ("[T]he Injunction[] prohibit[ed] 'destroying any evidence relating to the Defendants' social media pages'" and 'Defendants do not contest that they intentionally deleted the account . . . [p]roof of noncompliance is thus clear and convincing."); *CBS Broad. Inc.*, No. 10 CIV. 7532 (NRB), 2014 WL 3702568, at *5 (noting the "Injunction unquestionably disallows the use of mini-antenna technology to broadcast plaintiffs' content," and holding "the proof of FilmOn's noncompliance is clear and convincing" where "[t]he exhibits submitted by plaintiffs more than adequately demonstrate that FilmOn streamed the networks' copyrighted programming to multiple cities in violation of the Injunction.").

*Third*, Defendants have "not only failed to be 'reasonably diligent' in following the PI Order, [but] they have failed to follow any part of the PI Order[,]" and have otherwise failed to appear in this action. *See* ECF No. 31-1 at 11 (despite the PI Order, entered and served over three months ago, Defendants "have continued to engage in willful and blatant violations of the PI Order" by: (i) refusing to cease using the infringing trademarks of "Bagel Toastery" or "Bagel Toasterie[,]" (ii) failing to destroy all items that contained the infringing designations within 21 days of the PI Order, (iii) failing to change their business name within 21 days of the PI, and (iv) failing to file a sworn report with the Court explaining how they have complied with the PI within 30 days of the PI); *see e.g.*, *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, No. 96 CIV. 9721 (PKL) (THK), 2002 WL 2012618, at *8 (S.D.N.Y. Sept. 3, 2002) ("Alfredo Versace's involvement in the sale of watches, jeans and handbags meet the three part test for civil contempt because: (1) the preliminary injunction unambiguously prohibits the use of Infringing Marks and requires the

Disclaimer whenever a good is indicated as "Designed by Alfredo Versace"; (2) there is clear and convincing evidence that Alfredo Versace violated the preliminary injunction; and (3) Alfredo Versace has not been reasonably diligent in complying with the preliminary injunction with respect to watches, jeans and handbags."); *CBS Broad. Inc.*, No. 10 CIV. 7532 (NRB), 2014 WL 3702568, at *6–7 ("[I]nstead of seeking a modification of the Injunction or any other form of relief from this Court, defendant made the unilateral decision to stream plaintiffs' programming across the country. Defendant has demonstrated a repeated willingness to flout the authority of the federal judiciary, and it is essential for this Court to make clear the obvious: the Injunction and the Judgment are not mere suggestions, but are orders that demand compliance."). There is not a scintilla of evidence of attempted compliance.

Accordingly, the Court finds Defendants in civil contempt of court for their willful violation of the Preliminary Injunction. Next, the Court turns to the issue of whether civil contempt sanctions are warranted. *See e.g.*, *Aquavit Pharmaceuticals, Inc.*, No. 19CV3351VECRWL, 2021 WL 4312579, at *24 ("Defendants use of a mark consisting of 'AQUAGOLD fine touch' owned by Plaintiff, not Defendants, on social media is thus prohibited by the Injunction, and Defendants failure to cure the violation constitutes ongoing contempt.").

### B.     Civil Contempt Sanctions are Appropriate

Plaintiff requests this Court hold Defendants in contempt for violating this Court's PI Order and seek an Order requiring Defendants to:

- Pay sanctions to Plaintiff of $1000.00 per day for every day, from the date of the [order on the Motion for Contempt], that Defendants operate their business using the infringing trademarks of "Bagel Toastery" or "Bagel Toasterie" (hereafter, "**coercive sanctions**").

- Pay sanctions to Plaintiff in the amount equal to any and all profits that Defendants earn from the sale of food products under the infringing trademarks of "Bagel Toastery" or "Bagel Toasterie, from the date of [the order on the Motion for

Contempt] and pay Plaintiff's attorney fees and costs related to [the] Motion [for Contempt] (hereafter, "**compensatory sanctions**").

- Individually and on behalf of their company, prepare, sign and file a sworn certification that they have fully complied with the PI order and have not violated any terms of it.

*See* ECF No. 31-8. The undersigned address each request in turn.

"For coercive sanctions, a court has broad discretion to design a remedy that will bring about compliance." *Id.* (internal citations omitted). In doing so, the court must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987)) ("*Dole*"). "A sanction coerces a defendant when it 'forces the contemnor to conform his conduct to the court's order.'" *CBS Broadcasting*, 814 F.3d at 101 (quoting *New York State National Organization For Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998)); *In Re Stockbridge Funding Corp.*, 158 B.R. 914, 918 (S.D.N.Y. 1993) (internal citations omitted) ("Coercive sanctions afford a contemnor an opportunity to purge his contempt, and end as soon as that contemnor ceases his contumacious behavior") (quoting *Ochoa v. United States*, 819 F.2d 366, 369 (2d Cir. 1987)); *Aquavit Pharmacueticals, Inc.*, No. 19CV3351 (VECRWL, 2021 WL 4312579, at *23 ("In contrast to compensatory sanctions, which look to the past, coercive sanctions take aim at the future."). "A per-diem fine is widely recognized as an effective coercive tool." *Raghavendra v. Trs. of Columbia Univ.*, 06 cv 6841 (PAC)(HBP), 2017 WL 6000553, at *4 (S.D.N.Y. Dec. 1, 2017). "The contemnor bears the burden of establishing a lack of financial resources to prevent imposition of monetary sanctions." *Jolen, Inc.*, No. 19-CV-1296 (PKC), 2019 WL 2949988, at *4.

Taking account of the *Dole* factors outlined above, the Court finds the coercive sanctions requested by Plaintiff more than reasonable and well warranted under the circumstances. *See Jolen, Inc.*, No. 19-CV-1296 (PKC), 2019 WL 2949988, at *4 (noting "[c]ontinued noncompliance with the Injunction Order by [defendants] exposes [plaintiff] to unnecessary cost and expense through a vexatious action in a foreign forum and harms the integrity of the Injunction Order. Monetary sanctions are an efficacious means of enforcing the Injunction Order. Finally, the [defendants] have not demonstrated that imposition of monetary sanctions would represent any financial burden"); *see e.g.*, *Aquavit Pharmacueticals, Inc*., No. 19CV3351 (VEC) (RWL), 2021 WL 4312579, at *26 (recommending "imposing coercive sanctions (1) requiring Defendants to remediate all continuing violations no later than seven days after issuance of a court order adopting this recommendation; and (2) if Defendants fail to so remediate, imposing sanctions of $2,500 for every day until Defendants come into full compliance"); *CBS Broadcasting*, 814 F.3d at 101-04 (affirming district court's imposition of coercive sanctions in the amount of $10,000 per day); *Jolen, Inc. v. Kundan Rice Mills, Ltd.*, No. 19-CV-1296, 2019 WL 2949988, at *4 (S.D.N.Y. July 9, 2019) (imposing coercive sanction starting at $3,000 and doubling after every successive week of non-compliance with respect to anti-injunction restriction); *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, No. 96-CV-9721, 2002 WL 2012618, at *11 (S.D.N.Y. 2002) (imposing $2,000 daily coercive sanction on contemptuous trademark infringer); *CBS Broad. Inc.*, No. 10 CIV. 7532 NRB, 2014 WL 3702568, at *6–7 ("The sanctions we impose are not punitive, but civil in nature, as they serve the purpose of coercing future compliance with the Injunction").

For compensatory sanctions, "a court should reimburse the injured party for its actual damages." *Id*. (internal citations omitted). "Though compensatory sanctions need not precisely match losses, the sanction should correspond at least to some degree with the amount of damages."

*Id*. Compensatory sanctions may include an award of attorneys' fees and costs if the Court finds willful violation, however, "whether willfulness or bad faith is required to order attorney fees as a sanction for violating a court order "remain[s] an open one in our Circuit[.]" *See Broker Genius Inc. v. Seat Scouts LLC*, 17 cv 8627 (SHS), 2019 WL 2462333, at *3 (S.D.N.Y. June 13, 2019); *Jacobs v. Citibank, N.A.*, 318 Fed. App'x 3, 5 n.3 (2d Cir. 2008). The undersigned additionally finds that Plaintiff is entitled to "a compensatory fine equal to any profits made by [Defendants] via activities in violation of the preliminary injunction." *A.V. by Versace, Inc.*, No. 96 CIV. 9721PKLTHK, 2002 WL 2012618, at *10–11; *Aquavit Pharmacueticals, Inc. v. U-Bio Med, Inc.*, No. 19CV3351VECRWL, 2021 WL 4312579, at *13 (holding plaintiff entitled to disgorgement of Defendants' profits from sales of infringing devices that violated the Injunction). However, in order to make that determination, the Court would need to identify "in the first instance which categories of prohibited sales are ascertainable and for which the profits ought to be disgorged[,]" and "much about Defendants' contempt-related sales data [at this juncture] remains unclear[.]" *Id*. As such, the undersigned "finds it premature to ascertain Defendants' contempt-related profits." *Id*. ("The information is not sufficiently developed, and it would be inequitable for all parties to determine a disgorgement figure that is not based on a more fulsome record."); *see e.g.*, *A.V. by Versace, Inc.*, No. 96 CIV. 9721 (PKL) (THK), 2002 WL 2012618, at *10–11 (awarding plaintiff a compensatory fine equal to any profits made by defendant via activities in violation of the preliminary injunction, and ordering defendant to produce to plaintiff and to the Court, within sixty days of the decision, "a detailed statement of all net profits derived by [defendant] from such licensing and sales throughout the world from [the date the injunction was issued] until the date of [the] decision.").

Likewise, the undersigned finds Plaintiff is also "entitled to attorneys' fees in an amount to be determined." *See e.g.*, *CBS Broad. Inc.*, No. 10 CIV. 7532 NRB, 2014 WL 3702568, at *6–7 ("Plaintiffs' counsel shall submit on notice a proposed form of judgment, supported by an affidavit detailing their attorneys' fee request, to this Court on or before July 30, 2014."); *A.V. by Versace, Inc.*, No. 96 CIV. 9721PKLTHK, 2002 WL 2012618, at *10–11 (holding plaintiff entitled to attorney's fees and costs associated with bringing the motion for contempt where defendant's violation of the preliminary injunction was "willful" and directing Plaintiff to serve and file, within thirty days of the order issued by the district court, a memorandum and affidavits in support itemizing its total attorneys' fees and costs associated with its motion for contempt); *Weitzman v. Stein,* 98 F.3d 717, 719 (2d Cir.1996) ("Indeed, to survive review in this court, a district court, having found willful contempt, would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt.").

Finally, Plaintiff's request to have Defendants ordered to "[i]ndividually and on behalf of their company, prepare, sign and file a sworn certification that they have fully complied with the PI order and have not violated any terms of it" is also reasonable. *See e.g., A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 296 (S.D.N.Y. 2000) ("Within thirty days, Mr. Versace shall file an affidavit describing his efforts to delete any infringing references and noting any references he was unable to remove"). Accordingly, this Court holds Defendants in contempt for violating this Court's PI Order and issues a further Order as follows:

- Requiring Defendants to pay coercive sanctions to Plaintiff of $1000.00 per day for every day, from the date of this Order, that Defendants operate their business using the infringing trademarks of "Bagel Toastery" or "Bagel Toasterie."

- Requiring Defendants to produce to Plaintiff and to the Court, within sixty days of this Order, a detailed statement of all net profits derived by Defendants from such licensing and sales throughout the world from the date the PI Order was issued until the date of this

Order, so that the Court may properly determine the amount of compensatory sanctions to be imposed in this matter.

- Requiring Plaintiff to serve and file, within thirty days of this Order, a memorandum and affidavits in support itemizing its total attorneys' fees and costs associated with its Motion for Contempt, so that the Court may properly determine the amount of compensatory sanctions to be imposed in this matter.

- Requiring Defendants, individually and on behalf of their company, to prepare, sign and file a sworn certification that they have fully complied with the PI order and have not violated any terms of it within thirty days of this Order.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Attorney Fees (ECF No. 23) is **GRANTED** *in part* and **DENIED** *in part*, and Plaintiff's Motion for Contempt Sanctions (ECF No. 31) is **GRANTED**. Plaintiff's Motion for Attorney Fees (ECF No. 23) is granted in part as follows:

(i) legal fees ($25,563.50) and expenses ($1,659.10) awarded to SNEED PLLC in the amount of **<u>$27,222.60</u>**, and

(ii) legal fees ($6,040.00) and expenses ($402.00) awarded to Cooper, LLC in the amount of **<u>$6,442.00</u>**, for a total of **<u>$33,664.60</u>** in overall fees and expenses.

Plaintiff's Motion for Contempt Sanctions (ECF No. 31) is granted as follows:

(i) Defendants are ordered to pay coercive sanctions to Plaintiff of $1000.00 per day for every day, from the date of this Order, that Defendants operate their business using the infringing trademarks of "Bagel Toastery" or "Bagel Toasterie."

(ii) Defendant are ordered to produce to Plaintiff and to the Court, **<u>within sixty (60) days</u>** of this Order, a detailed statement of all net profits derived by Defendants from such licensing and sales throughout the world from the date the PI Order was issued until the date of this Order, so that the Court may properly determine the amount of compensatory sanctions to be imposed in this matter.

(iii) Plaintiff is directed to serve and file, **<u>within thirty (30) days</u>** of this Order, a memorandum and affidavits in support itemizing its total attorneys' fees and costs associated with its Motion for Contempt, so that the Court may properly determine the amount of compensatory sanctions to be imposed in this matter.

(iv) Defendants are ordered to, individually and on behalf of their company, prepare, sign and file a sworn certification that they have fully complied with the PI order and have not violated any terms of it, **within thirty (30) days** of this Order.

Dated:  Central Islip, New York
        November 15, 2024

                                     SO ORDERED:

                                     /S/ *James M. Wicks*

                                         JAMES M. WICKS
                                     United States Magistrate Judge